[No. A123065. First Dist., Div. Four. May 29, 2009.]

In re BRANDEN O., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
BRANDEN O., Defendant and Appellant.

Counsel

Christopher Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Ronald E. Niver, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**SEPULVEDA, J.**—The minor appeals from a dispositional order that followed a contested jurisdictional hearing where the juvenile court found that the minor committed assault with a stun gun, a misdemeanor. (Pen. Code, § 244.5.[1]) The minor argues on appeal that insufficient evidence supports the jurisdictional finding, because the person he shocked was not immobilized, as set forth in the statute. He also argues that the juvenile court abused its discretion in admitting expert testimony about the stun gun used by the minor. We find no error and affirm.

I.

Factual and Procedural Background

On the afternoon of August 17, 2008, two teenaged boys (Hunter B. and John M.)[2] were playing on the computer at John M.'s Walnut Creek home, when they looked out the window and saw the minor and another boy they did not know reaching into cars parked in neighbors' driveways.[3] Believing that the boys were trying to steal the cars or something inside them, Hunter B. went outside to confront them. When Hunter B. got close to the

---

[1] The statute was amended effective January 1, 2009 (Stats. 2008, ch. 556, § 1), after the date of the minor's offense. (See *post*, fn. 5.) The changes to the statute do not affect the issues we address in this opinion. All statutory references are to the Penal Code unless otherwise indicated.

[2] For the reasons set forth in *In re Edward S.* (2009) 173 Cal.App.4th 387, 392, footnote 1 [92 Cal.Rptr.3d 725], we decline to follow the " 'informal recommendation of the Reporter of Decisions' " to identify minors in delinquency proceedings by only their initials to protect their privacy, and instead use the parties' first names and last initials. (Cal. Rules of Court, rule 8.400(b)(2); see also Cal. Style Manual (4th ed. 2000) §§ 5:9, 5:10, p. 180 ["Individuals entitled to protective nondisclosure are described by first name and last initial . . . ."].)

[3] The other boy was later identified as Joseph C. According to the minor, no petition was filed against Joseph C.

minor, the minor "tased" him with a stun gun.[4] Hunter B. testified that he felt a shock. He took "one step back from the shock," paused for a few seconds, then ran and tackled the minor to the ground and hit him. The minor then "tased" Hunter B. again. When Hunter B. was shocked the second time, he released the minor and then "kind of sat on the ground for a few seconds and recuperated from being tased one more time." Hunter B. wrestled the minor to the ground and punched him. The minor's companion (Joseph C.) then tackled Hunter B., who released the minor and Joseph C. and let them go. Hunter B. walked slowly toward John M., and they called the police. A line could be seen on Hunter B.'s upper chest where he was shocked.

Two Walnut Creek police officers detained the minor a short time later and found a stun gun in plain view in the bushes about three feet away from him. One of the officers, Officer Joseph Donleavy, displayed the gun in court, and turned it on. The gun emitted blue light and made a buzzing sound that was "very loud and frightening," according to the juvenile court. Donleavy testified that, based on his training and experience with tasers issued by the police department that have similar capabilities, it was his opinion that the stun gun was capable of temporarily immobilizing someone by inflicting an electrical charge. He acknowledged on cross-examination that he did not know the specific electrical capacity of the device, and he had never actually seen that type of weapon used on a human being in the field.

A petition was filed alleging that the minor came within the provisions of Welfare and Institutions Code section 602, in that he committed misdemeanor assault with a stun gun in violation of Penal Code section 244.5, subdivision (b). Following a contested jurisdictional hearing, the juvenile court sustained the petition. The court stated, "I saw the stun gun demonstrated here in court. It was very loud. It is a terrifying noise, actually. I saw the blue lights—which looked electrical to this court—unless blue can come out of the air for no reason at all—emanating from this gun." The court said it had seen the wound Hunter B. suffered and heard his testimony that he felt a shock at his chest and heard the "buzz of a taser." The court observed, "He [Hunter B.] did say that he did not get up as fast, right after the taser, as he thought he could have when he felt the shock. He was slower taking after the young man here in this court. [¶] I don't know what else one has to prove that this was a stun gun and that this was used in a very aggressive way."

The court adjudged the minor a ward of the court with no termination date, and placed the minor on probation subject to various terms and conditions. This timely appeal followed.

---

[4] Although witnesses testified that Hunter B. was "tased," the device at issue was a stun gun, not a taser.

II.

DISCUSSION

A. *Substantial Evidence Supports Finding That Minor Used a Stun Gun.*

The minor first argues that there was insufficient evidence that he used a device that met the statutory definition of a stun gun. (§ 244.5, subd. (a).) In reviewing the trial court's determination, this court " 'must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Citation.]' " (*In re Manuel G.* (1997) 16 Cal.4th 805, 822 [66 Cal.Rptr.2d 701, 941 P.2d 880], original italics.)

At the time the crime was committed, section 244.5 provided that it was unlawful to assault another with a stun gun or taser. (§ 244.5, subd. (b).) A "stun gun" was defined as "any item, except a taser, used or intended to be used as either an offensive or defensive weapon that is *capable of temporarily immobilizing a person* by the infliction of an electrical charge."[5] (Former § 244.5, subd. (a), italics added.)

The minor argues that the prosecution failed to prove that he violated section 244.5, because Hunter B. was never immobilized by the device used on him. The statute does not define the word "immobilizing," and no published case interprets it. The parties agree that we may rely on dictionary definitions to determine whether the device the minor used was a stun gun, as defined by the statute. (*People v. Forrest* (1967) 67 Cal.2d 478, 480–481 [62 Cal.Rptr. 766, 432 P.2d 374] [dictionary definitions of dirks, daggers].) "Immobilize" is defined as "to make immobile," as "to prevent freedom of movement or effective use of," or "to reduce or eliminate motion of (the body or a part) by mechanical means . . . ." (Merriam-Webster's Collegiate Dict. (11th ed. 2004) p. 621, col. 1 (Merriam-Webster's).) "Immobile," in turn, is defined as "incapable of being moved," or "not moving." (*Ibid.*)

Hunter B. testified that he "was slower" reacting after he was shocked the first time, which enabled the minor and his companion to get "a lead" on him. John M. testified that Hunter B. released the minor after he was "tased" the second time, and he "kind of sat on the ground for a few seconds and

---

[5] The section now similarly defines "stun gun" as "any item, except a less lethal weapon, as defined in Section 12601, used or intended to be used as either an offensive or defensive weapon that is capable of temporarily immobilizing a person by the infliction of an electrical charge." (§ 244.5, subd. (a); Stats. 2008, ch. 556, § 1.) The word "taser" no longer appears in the statute.

recuperated from being tased one more time." This was sufficient to show that Hunter B. was temporarily immobilized (§ 244.5, subd. (a)), because the minor "prevent[ed his] freedom of movement or effective use [there]of" and "reduce[d] . . . motion of (the body or a part) by mechanical means" (Merriam-Webster's, *supra*, at p. 621, col. 1).

The minor focuses on cases with extreme examples of victims being "immobilized" in arguing that Hunter B. was not sufficiently affected here. (*People v. Navarette* (2003) 30 Cal.4th 458, 495 [133 Cal.Rptr.2d 89, 66 P.3d 1182] [defendant immobilized victim before murdering her by tying her hands and feet together, demonstrating murder was intentional]; *People v. Blake* (2004) 117 Cal.App.4th 543, 559 [11 Cal.Rptr.3d 678] [defendant used chemical spray to "immobilize and temporarily disable" victims, resulting in great bodily injury because of respiratory distress for 10 minutes, burning sensations, and temporary blindness].) He fails to consider that the statute focuses on whether a stun gun can *temporarily* immobilize a victim. "Temporarily" is defined as "during a limited time" (Merriam-Webster's, *supra*, at p. 1286, col. 2), a period that can last "less than a minute" (*People v. Score* (1941) 48 Cal.App.2d 495, 497 [120 P.2d 62] [temporary possession of another's vehicle can occur in short period of time]). Although it is true that Hunter B. apparently was not affected by the stun gun for more than a few seconds, when he was slowed down and apparently forced to release his hold on the minor, this was sufficient to show that he was temporarily immobilized.[6]

▮ Even assuming that Hunter B. was not temporarily immobilized, substantial evidence still supports the juvenile court's jurisdictional finding, because section 244.5 does not require that a victim actually be temporarily immobilized. The statute defines a "stun gun" as being "*capable* of temporarily immobilizing a person by the infliction of an electrical charge." (§ 244.5, subd. (a), italics added.) There is no requirement that a victim actually be immobilized, which is reflected in a standard jury instruction for the offense. (CALCRIM No. 876 ["No one needs to actually have been injured by the defendant's act."].) The question is not whether immobilization was actually caused (although that is probative of the stun gun's capabilities), but whether the device at issue was capable of producing that result. (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1063, 1065–1066 [10 Cal.Rptr.2d 839] [§ 245,

---

[6] The minor argues in his reply brief that the "common sense understanding" of being shot with a stun gun is based on television images of people being tased: "those people fall to the ground and writhe uncontrollably for some period of time." We note that section 244.5 is a wobbler, with a maximum possible sentence of three years in prison. (§ 244.5, subd. (b).) The petition here alleged only a misdemeanor violation. Had the minor's use of a stun gun here immobilized Hunter B. to the point where he was writhing uncontrollably for an extended period of time, perhaps a felony would have been alleged. In any event, we decline the minor's invitation to rely upon television renditions in interpreting the scope of the statute.

subd. (a)(1) prohibits assault with force *likely* to produce great bodily injury; no requirement that such injury actually occur].) ■ Here, there is no dispute that the minor assaulted Hunter B. with a device that emitted an electrical charge, and Officer Donleavy testified that the device was *capable* of temporarily immobilizing a person. This was sufficient evidence to show that the minor assaulted Hunter B. with a stun gun, as defined by section 244.5, subdivision (a).

The minor argues that Donleavy's testimony about the capability of the stun gun the minor used was speculative, and that Donleavy did not know the electrical capacity of the device.[7] Although it is true that the officer did not know the precise specifications of the stun gun the minor used, he provided sufficient foundation for his opinion about its capability. He testified, "The stun capacity of this is exactly the same as the taser's stunning capacity. The Department issued taser works in two modes: there's a mode where you fire two darts, which spread, create a connection—or, with the cartridge removed there's two prongs permanently fixed where you can do a stun driving—which is exactly what this does. [¶] . . . [¶] I've seen it done to officers and I've also done it to suspects in the field." We agree with the juvenile court that it was not necessary that Donleavy have used "the exact same gun" that the minor used in order to testify about its capabilities, where he was sufficiently familiar with the way stun guns are used based on his training and experience. There was sufficient evidence that the stun gun at issue was capable of temporarily immobilizing a person, and substantial evidence supports the juvenile court's finding that the minor violated section 244.5.

B. *No Abuse of Discretion to Admit Donleavy's Testimony.*

The prosecutor never asked that Donleavy be qualified as an expert. The minor argues on appeal that the juvenile court abused its discretion in admitting Donleavy's "expert" testimony, because he was not qualified to give such testimony. We disagree.

■ Evidence Code section 720, subdivision (a) provides that a person may testify as an expert if he has sufficient special knowledge, skill,

---

[7] When asked on cross-examination whether Donleavy was "speculating that [the device] would be similar because it's based on the same science as the one you use as a trained police officer with the weapons that are given to you as standard issue?" Donleavy replied, "Yes." The following exchange also took place during cross-examination: "Q. So do you have any experience with this particular weapon? [¶] A. No. [¶] Q. And you didn't try this particular type of weapon on yourself? [¶] A. No. [¶] Q. Or on another person? [¶] A. No. [¶] Q. So you actually have no actual experience with regard to this particular weapon on whether it puts out a sufficient electric charge to immobilize a human being? [¶] A. Not with that particular weapon." Contrary to the minor's assertion, Donleavy did not "reverse[] his original opinion while on the stand," because he consistently testified that although he had not used the particular weapon at issue, it was his opinion it was capable of temporarily immobilizing a person.

experience, training, or education to qualify him as an expert on the subject to which he will be testifying. An expert may testify on a "subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact," and is based on matter that is known to the witness and is of a type that reasonably may be relied on. (Evid. Code, § 801.) " ' "The competency of an expert is relative to the topic and fields of knowledge about which the person is asked to make a statement." ' " (*People v. Watson* (2008) 43 Cal.4th 652, 692 [76 Cal.Rptr.3d 208, 182 P.3d 543].) A lower court's ruling on the admissibility of expert testimony is reviewed for abuse of discretion. (*Ibid.*)

The minor argues that the juvenile court did not require the prosecutor to sufficiently identify the fields of expertise about which Donleavy was going to testify, and the court likewise did not require the prosecution to demonstrate the officer's qualifications to testify as an expert (Evid. Code, § 720, subd. (a)). This is likely because the prosecutor never offered Donleavy as an expert. As respondent notes, had the minor objected below on the grounds advanced on appeal, both parties could have conducted voir dire and requested that the court make an appropriate ruling as to the officer's qualifications.

Even assuming arguendo that this issue was not waived by failure to object, as respondent argues, the argument lacks merit. As set forth above (pt. II.A.), Donleavy provided sufficient foundation for his testimony: he testified that he was not formally trained with stun guns, but that officers are issued tasers with the capacity to temporarily immobilize someone from the electrical charge. He also testified that he had encountered similar stun guns in the field when he took them from suspects, that his taser made a similar sound as the device that the minor used, and that the stun capacity of the device used by the minor was "exactly the same" as his taser. Although he testified that he did not know the actual electrical capacity of the stun gun used by the minor, he did not "concede[] that he did not know whether th[e] particular device had the capacity to incapacitate someone based on its electrical output," as the minor claims. Further, given the foundation that was laid, Officer Donleavy's testimony was clearly regarding an area beyond common experience and was of assistance to the trier of fact, as required by Evidence Code section 801.

Donleavy also testified that he had seen injuries from tasers used in "the stun gun method," and that Hunter B.'s injury from the stun gun (as depicted in a photograph taken after he was shocked) was consistent with the use of a taser that would be used by police officers. We disagree with the minor's argument that this was improper "expert medical testimony," because no medical expertise was necessary to support it. Moreover, Donleavy did not testify (as the minor claims on appeal) that Hunter B.'s injury "could medically demonstrate that the device that appellant used produced an

electrical current capable of temporarily immobilizing a person," or that "an injury like the one depicted in the photograph could result only from a device which was capable of temporarily immobilizing a person." Any reasonable inferences from the officer's testimony were left to the juvenile court to draw. The court did not abuse its discretion in admitting Donleavy's testimony.

## III.

### DISPOSITION

The dispositional order is affirmed.

Ruvolo, P. J., and Reardon, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 9, 2009, S174275.