Filed 10/22/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re M.S., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE, <br>     Plaintiff and Respondent, <br> v. <br> M.S., <br>     Defendant and Appellant. | A161646 <br><br> (Solano County <br>  Super. Ct. No. J44979) |

15-year-old M.S. appeals from the juvenile court's order sustaining an allegation under Penal Code section 626.10, subdivision (a) that she possessed a stun gun on school grounds.[1]  She contends there was insufficient evidence to support the court's finding that the weapon she used to threaten another student with was capable of temporarily immobilizing a person and, therefore, that it qualified as a stun gun within the meaning of sections 626.10, subdivision (a) and 244.5, subdivision (a).  We agree with M.S. and therefore reverse.

---

[1] M.S. appeals from the final judgment entered after the dispositional order. Because we reverse the jurisdictional order, any appeal from the dispositional order is moot.

Unless otherwise indicated, further statutory citations are to the Penal Code.

## BACKGROUND

M.S. and J.G. attended the same high school. Their relationship, although limited, was acrimonious. In early January 2020 they argued during class and J.G. hit M.S. with a "small reading book." J.G. was suspended for two days.

About a month later the two had another confrontation. J.G. had just finished a P.E. class and discovered his backpack was gone. M.S. was nearby, "hanging out hiding in the bushes with her friends." J.G. accused her of taking the backpack. She responded, "[b]itch, you think I got your backpack, go away," and hung around calling J.G. names while he and a friend searched for it. J.G. told her to "back off" or he would "pull the book on her again," and then held up a book (in fact, the sequel to the book that figured in their previous altercation). M.S. pulled a pink rectangular device with two protruding antennas out of her bag, turned it on, and said "[t]ry that again, I'm going to tase you in the dick." A spark erupted from the device when M.S. turned it on. J.G. thought the device was a taser, "panicked a bit," and retreated.

When the principal learned of the incident he summoned M.S. to his office and asked if she had the device with her. M.S. handed it over and said she had pulled it out in self-defense. The principal notified the school resource officer, Officer Reed, who took custody of the device. It was admitted into evidence at the jurisdictional hearing.

At the time of the hearing, Officer Reed had been a police officer for six and one-half to seven years. He had learned about tasers and stun guns during basic academy training,[2] participated in quarterly and annual

---

[2] Officer Reed explained that the difference between tasers and stun guns is that tasers deploy darts, while stun guns need to make contact with

2

training sessions related to tasers, and watched training videos about them. He had experience with tasers and stun guns in the field and had seen the effects of such devices.

Reed identified M.S.'s device as a stun gun and described it as looking "over-the-counter." He did not know the weapon's voltage, which was not indicated on it, and testified that the "capability" of a stun gun depended on its voltage or "charge." As a result, he initially opined that M.S.'s stun gun probably could not immobilize a person.

Later in his testimony, however, Reed noted that he had been trained not to use a stun gun such as M.S.'s on pregnant or smaller individuals "because of the harm that might be caused" and opined that M.S.'s stun gun could immobilize a person of smaller stature, and, depending on their size, age, and medical condition, could "in some cases even cause death." He, however, based this opinion on videos that he had seen of stun guns with known voltages immobilizing persons.

The juvenile court found that M.S. brought a stun gun into school, sustained the section 626.10, subdivision (a) allegation, and dismissed an additional allegation of felony drawing or exhibiting a deadly weapon (§ 417, subd. (a)(1)) for insufficient evidence. The court subsequently reduced the sustained offense to a misdemeanor, adjudicated M.S. a ward of the court, and placed her in her mother's custody subject to various probation conditions. M.S. filed this timely appeal.

---

the skin. Otherwise the two devices "work the same way as far as an electronic charge."

# DISCUSSION

M.S. contends reversal is required because "[t]here is no substantial evidence that the device [she] possessed had the capability to immobilize a person and no evidence at all about its electrical charge." More specifically, she asserts that while Officer Reed had knowledge about tasers and stun guns in general, the evidence was insufficient to show he had sufficient foundational knowledge to determine that M.S.'s specific device could temporarily immobilize someone. We agree.

## A. Standard of Review

"When a defendant challenges the sufficiency of the evidence, ' "[t]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." [Citation.]' [Citations.]" (*People v. Clark* (2011) 52 Cal.4th 856, 942–943.)

## B. Analysis

Because there was no substantial evidence that M.S.'s stun gun was capable of temporarily immobilizing a person, we reverse.

Section 626.10, subdivision (a) makes it illegal to take a taser or stun gun onto school grounds. To qualify as a stun gun for purposes of this prohibition, a device must be "capable of temporarily immobilizing a person by the infliction of an electrical charge." (§§ 244.5, subd. (a), 626.10, subd. (a).) "Immobilize" is defined in this context as " 'to make immobile,' as 'to prevent the freedom of movement or effective use of,' or 'to reduce or eliminate motion of (the body or a part) by mechanical means. . . .' " (*In re Branden O.* (2009) 174 Cal.App.4th 637, 641 (*Branden O.*).) "Temporarily," in

4

turn, can mean as short as "a few seconds." (*Id.* at p. 642.) "The question is not whether immobilization was actually caused (although that is probative of the stun gun's capabilities), but whether the device at issue was capable of producing that result." (*Ibid.*)

Here, the only evidence that M.S.'s device was capable of temporarily immobilizing a person as required for M.S.'s conviction under section 626.10, subdivision (a) came from the expert testimony of Officer Reed. He testified that, based on his training and experience, electrical devices "such as" M.S.'s "could immobilize or hurt and in some cases even cause death" and that "a stun gun [could] immobilize somebody of smaller stature." Although this issue is close, we are not persuaded this testimony is sufficient to prove beyond a reasonable doubt that M.S.'s "over-the-counter" device was capable of temporarily immobilizing a person.

" 'The chief value of an expert's testimony . . . rests upon the *material* from which his opinion is fashioned and the *reasoning* by which he progresses from his material to his conclusion; . . . it does not lie in his mere expression of conclusion.' [Citation] . . . 'Expert evidence is really an argument of an expert to the court, and is valuable only in regard to the proof of the *facts* and the validity of the *reasons* advanced for the conclusions.' [Citations.]" (*People v. Bassett* (1968) 69 Cal.2d 122, 141.) In other words, " 'the opinion of an expert is no better than the reasons upon which it is based.' " (*Id.* at p. 144.) Thus, "some substantive factual evidentiary basis, not speculation, must support an expert witness's opinion." (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 661.) "If" the expert "opinion is not based upon facts otherwise proved, or assumes facts contrary to the only proof, it cannot rise to the dignity of substantial evidence." (*People v. Bassett*, at p. 146.)

In opining that M.S.'s *particular* stun gun was capable of temporarily immobilizing a person, Officer Reed relied on his training and experience with stun guns and tasers. The critical question, however, is whether that training and experience, in conjunction with his limited knowledge about the stun gun M.S. brandished, was sufficient to support his opinion. And that is where his opinion falls short. Officer Reed testified without contradiction that commercially available stun guns have a wide range of voltages or "delivered charge," and that the delivered charge determines the effect on the person on whom the device is deployed. But nothing about M.S.'s stun gun indicated its voltage or charge, and Officer Reed conceded he did not know what voltage or charge it was capable of delivering. Officer Reed's training and experience did not fill this gap. As he testified, the videos depicting immobilizations caused by stun guns—which formed the basis for his opinion—involved stun guns with *known* voltages or delivered charges. Thus, Officer Reed "failed to provide any evidentiary support for" his opinion. (*People v. Ochoa*, *supra*, 179 Cal.App.4th at p. 663.)

The lack of reasoning behind Officer Reed's opinion is even more problematic. (See *People v. Bassett*, *supra*, 69 Cal.2d at p. 144 [" 'the opinion of an expert is no better than the reasons upon which it is based' "].) Indeed, Officer Reed provided no explanation whatsoever for his apparent conclusion that M.S.'s stun gun was similar to the tasers he trained with or the stun guns he saw in videos. (See *ibid.* [finding expert testimony insufficient because it "provided essentially no ' "reasons" ' for their conclusions"].) The absence of such an explanation is even more glaring because Officer Reed initially opined that "[a]s far as the immobilization," M.S.'s stun gun is "probably not going to do that."

6

We are cognizant that the trial court could reasonably infer Reed had the opportunity to inspect M.S.'s device after taking custody of it at the school and that he was aware it had sparked when M.S. turned it on. But even with this, in the absence of any knowledge of the electrical capacity of the particular device at issue, Reed's opinion that a stun gun "such as" M.S.'s could cause immobilization is too speculative to prove the element beyond a reasonable doubt. (See *People v. Ochoa*, *supra*, 179 Cal.App.4th at p. 663 ["An appellate court cannot affirm a conviction based on speculation, conjecture, guesswork, or supposition"].)

In this regard, the People's reliance on *Branden O.*, *supra*, 174 Cal.App.4th at page 637 is misplaced. As here, the officer in *Branden O.* did not know the electrical capacity of the stun gun in question. (*Branden O.*, *supra*, 174 Cal.App.4th at pp. 640, 643, fn. 7.) In contrast to this case, however, the stun gun in *Branden O.* had actually been deployed on the victim, who displayed the wound it left and testified that the shock slowed his movements. (*Id.* at p. 640.) In addition, the court observed the device emit a blue light and make a " 'very loud and frightening' " noise when it was turned on. (*Ibid.*) Here, in contrast, there was no evidence regarding the device's effect on J.G. (necessarily, as M.S. only threatened him with it) and no in-court demonstration. Notwithstanding Officer Reed's general knowledge of tasers and stun guns and J.G.'s testimony that M.S.'s stun gun emitted a spark, the record does not contain substantial evidence that its electrical output was sufficient to have temporarily immobilized him. Accordingly, the jurisdictional order must be reversed.

## DISPOSITION

The jurisdictional order is reversed.

7

_____

Chou, J.

WE CONCUR:

_____

Fujisaki, Acting P.J.

_____

Petrou, J.

A161646

**_In re M.S._ (A161646)**

Trial Court:                Solano County

Trial Judge:              Hon. John B. Ellis

Attorneys:

    First District Appellate Project's Independent Case System, Jonathan Soglin and Jason L. Stenson for Defendant and Appellant.

    Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.