[No. E045756. Fourth Dist., Div. Two. Nov. 20, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
GUILLERMO OCHOA, Défendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

˜Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II.B.–C.

## COUNSEL

Brett Harding Duxbury, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Rhonda Cartwright-Ladendorf, Kristen Chenelia and Vincent La Pietra, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MILLER, J.**—A jury convicted defendant Guillermo Ochoa of carjacking (count 1—Pen. Code, § 215, subd. (a)),[1] attempted robbery (count 2—§§ 664, 211), felon in possession of a firearm (count 3—§ 12021, subd. (a)(1)), and active participation in a criminal street gang (count 4—§ 186.22, subd. (a)). The jury hung on the section 186.22, subdivision (b), gang enhancement allegations attached to counts 1 through 3. After a second trial on the gang enhancements, another jury found the allegations attached to counts 1 and 3 true, but found the enhancement attached to count 2 not true. On count 1, the court sentenced defendant to life with a minimum parole eligibility date of 15 years.[2] On count 3, the court sentenced defendant to a five-year concurrent term consisting of the midterm of two years on the substantive offense with a consecutive three-year term on the attached gang enhancement. The four section 667.5, subdivision (b), prior prison term enhancements alleged in the information were never tried nor was any finding on them ever rendered; nevertheless, the court imposed concurrent, one-year sentences on each of them.

On appeal defendant makes three contentions: (1) that substantial evidence does not support the true findings on the gang enhancements; (2) that the prior prison term enhancements must be stricken and the prosecution barred from trying them on remand; and (3) that the court erred in determining the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The regular triad of punishment for carjacking without a gang enhancement is three, five, or nine years of imprisonment. (§ 215, subd. (b).)

proper amount of credits to which defendant was entitled. The People maintain that substantial evidence supports the findings on the gang enhancement allegations, but concede no finding was made on the prior prison term enhancements and that the matter must be remanded for proper calculation of defendant's custody credits. We reverse the true findings on the gang enhancements because we find they were not supported by substantial evidence. We furthermore agree with defendant that the prior prison terms must be stricken and that the People are barred from seeking to try them upon remand. Finally, we find the record sufficiently clear to order the award of custody credits as requested by defendant.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On November 7, 2005, around 9:15 p.m., the victim sat in the passenger seat of his mother's black Ford Ranger as she parked at a fast-food restaurant in Moreno Valley.[3] The victim waited in the vehicle with the window partially rolled down, while his mother went inside the restaurant. A compact car pulled into the parking lot approximately 14 to 15 feet away. Defendant, described as a balding Mexican with a mustache, got out of the compact car and approached the victim.

Defendant pulled a shotgun out of his jacket, pointed it at the victim's face, and asked the victim for his money. The victim showed defendant his wallet and told defendant he did not have any. Defendant loaded the shotgun and told the victim to give him the vehicle. The victim exited the vehicle and ran inside the restaurant. Defendant got into the vehicle and drove away.

Defendant made no apparent gang signs or signals during his commission of the crimes. Defendant was alone. When asked whether anything in defendant's behavior or dress evoked the victim's belief that defendant was involved in a gang, the victim replied "[a] little." When asked why, the victim replied, "[j]ust the way he was looking." When asked if it was because the defendant was Mexican with short hair, the victim responded that it was.

Deputy Juan Davalos from the Riverside County Sheriff's Department's gang classification unit testified that defendant had personally identified himself as a member of the Moreno Trece (or 13) gang with the gang moniker of "Triste" or "Sad Boy" on October 16, 2005, as part of "the booking or the classification process" at the jail. Deputy Davalos further

---

[3] Because defendant solely challenges the sufficiency of the evidence as to the true findings on the gang enhancements, we relay the facts solely as they were adduced at the second trial.

observed that defendant had a tattoo reading "Sureno" across his back; however, the deputy acknowledged there is no gang by the name of "Sureno" in Riverside County. Outside of prison, "Sureno" can mean a male Hispanic from Southern California with no gang ties; however, in prison it typically means a male Hispanic from Southern California with gang ties. The right to wear the tattoo is earned by performing criminal activity either inside or outside of prison. Deputy Davalos found no tattoos on defendant reading "Moreno Trece," "Moreno Valley Trece," or any other Inland Empire gang name.

Deputy Anthony Johnson, also from the Riverside County Sheriff's Department's special gang enforcement team, testified that Moreno Valley 13 is a local criminal street gang in the City of Moreno Valley. Deputy Johnson had investigated several crimes committed by members of that gang. He had spoken to and arrested members of the gang. Specifically, he noted that car theft is the "signature" crime for Moreno Valley 13 gang members. Carjacking, while a different crime than car theft, is a "typical signature-type crime . . . that's been made famous by gang members. [Carjacking is] a quick, easy . . . way to obtain a car, and most likely go out, either commit some other type of crime, or sell it for weapons, drugs, things of that nature."

Deputy Johnson testified that defendant had admitted to membership in Moreno Valley 13 on at least four occasions. Defendant had a tattoo of "Sureno" across his back meaning that he was a gang member from Southern California. Defendant had a tattoo of the number "13" on his left wrist. Defendant had previously stolen cars from members of his family and a neighbor. Deputy Johnson opined that defendant was a member of Moreno Valley 13. He acknowledged that while many crimes committed by gang members are performed for the benefit of the gang, gang members can commit crimes on their own without benefiting the gang. He agreed that "some of those crimes may not even be gang-related."

Sergeant Frank Assumma, from the Riverside Police Department, testified as an expert gang witness for the People. Sergeant Assumma testified that gangs advertise through graffiti, clothing, tattoos, and word of mouth. They "establish their respect through crimes, the commission of crimes, and crimes of violence." Respect is synonymous with fear. Fear benefits a gang by making rivals hesitant to attack them and inhibits community members from testifying against the gang. Those who commit the most crimes generate the most fear and, therefore, gain the most respect from within the gang. "[G]angs survive economically . . . through crimes. It's through theft, it's through drug dealing. By 'theft,' I mean either burglaries, or robberies, or carjackings . . . ."

Sergeant Assumma testified that there are five factors to consider in determining whether a crime was committed for the benefit of the gang: (1) whether gang members were involved in the crime; (2) what was said or done during the crime; (3) the kind of crime that was committed; (4) how the crime was committed; and (5) what the motive for the crime was. Here, defendant's gang membership "established what gang that he was going to be benefiting, for me. It established the fact that he is a gang member. And from that point—I could start from that point. Now, I can look at the crime to see what occurred during the crime and how that might benefit his gang." While defendant did not announce his gang affiliation during his commission of the underlying crimes, gang members frequently refrain from publicizing such associations because they wish to remain anonymous, i.e., such identification might readily lead to arrest. Nonetheless, Sergeant Assumma testified that, in this instance, the victim believed that defendant was a gang member by defendant's demeanor and appearance. Investigators often find that victims of crimes believe the offender was a gang member despite the fact that the suspect does not announce his gang affiliation; does not have observable, identifying gang tattoos; and does not wear readily identifiable gang specific clothing. What crimes the particular gang commits on a regular basis, i.e., the gang's "signature" crime, may also aid in determining whether the crime was committed to benefit the gang. Car theft was Moreno Valley 13's "signature" crime.

Other factors helpful in determining whether a crime was committed for the benefit of the gang include how, where, and why the crime was perpetrated. Whether a crime was committed within the gang's own territory or the territory of a rival gang can signify that the crime was committed to benefit the gang. Similarly, if the crime was committed against rival gang members, this often signifies it was executed to benefit the gang, particularly where the crime was committed in retaliation for some act by a rival gang. Sergeant Assumma believed the instant crimes may have been committed to enable defendant to retaliate against someone else, because defendant had immediately driven over to someone else's home and brandished the shotgun.[4] Where more than one gang member is involved in the commission of a crime, it is easier to say the crime was committed for the benefit of the gang.

---

[4] The jury at the first trial hung on a charge that defendant had exhibited a deadly weapon at this other individual's home (count 5—§ 417, subd. (a)(1)) after committing the carjacking. The court dismissed the count 5 offense upon the People's motion. No evidence was adduced at the first trial that the alleged victim of the brandishing was a rival gang member or had committed any act against defendant or his gang, which would require such retaliation; thus, nothing in the evidence at the first trial suggested anything but that defendant's need to retaliate against the brandishing victim, to the extent he even did, was anything but personal. (See fn. 9, *ante*.)

Sergeant Assumma opined, based on the aforementioned factors, that defendant committed the underlying crime (singular) for the benefit of his gang.[5] The theft was of "obvious benefit . . . to the gang" because there were "so many benefits to stealing a car for the gang." He testified that the carjacking would benefit the gang by providing general transportation to the gang's members, by enabling transportation of narcotics for sale by the gang, by enabling transportation to commit further crimes by the gang, by providing economic benefit to the gang by sale of the vehicle, by elevating defendant's status within the gang, and by raising the gang's reputation in the community.

On cross-examination, Sergeant Assumma admitted that there was no indication that defendant used the stolen vehicle to transport other gang members. He acknowledged there were no indications that defendant had claimed responsibility for his crimes in the name of his gang. He agreed that crimes can be committed by a gang member for his own benefit. However, he could not "think of too many crimes where there is not a dual benefit, where [both] the individual . . . and the gang . . . [do not benefit]." "An individual . . . will very rarely . . . engage in the types of crimes, especially the types of crimes we have been talking about, without a benefit. They are not going to just do it just because. They get benefits out of it—personal benefits and benefit for the gang."

## II.

## DISCUSSION

### A. *Gang Enhancements*

Defendant concedes that substantial evidence supported the second jury's inherent determination that defendant was an active gang member. Nevertheless, he contends that insufficient evidence supported the jury's determination that the carjacking or weapon possession were committed for the benefit of Moreno Valley 13. The People disagree. We find substantial evidence for the true findings on the gang enhancements lacking and, therefore, reverse those findings.

"In addressing a challenge to the sufficiency of the evidence supporting a conviction, the reviewing court must examine the whole record in the light most favorable to the judgment to determine whether it discloses substantial

---

[5] No direct testimony was adduced at the second trial suggesting that defendant's possession of the weapon, separate and apart from his commission of the carjacking and attempted robbery with that weapon, benefitted the gang.

evidence—evidence that is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] The appellate court presumes in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citations.] The same standard applies when the conviction rests primarily on circumstantial evidence. [Citation.] Although it is the jury's duty to acquit a defendant if it finds the circumstantial evidence susceptible of two reasonable interpretations, one of which suggests guilt and the other innocence, it is the jury, not the appellate court that must be convinced of the defendant's guilt beyond a reasonable doubt. [Citation.] ' "If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. [Citation.]" ' [Citation.]" (*People v. Kraft* (2000) 23 Cal.4th 978, 1053–1054 [99 Cal.Rptr.2d 1, 5 P.3d 68]; see also *People v. Augborne* (2002) 104 Cal.App.4th 362, 371 [128 Cal.Rptr.2d 258]; *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1329 [70 Cal.Rptr.3d 680] [specifically applying the substantial evidence test to a contention that a § 186.22, subd. (b), gang enhancement was unsupported by the evidence].)

▇ A gang expert's testimony alone is insufficient to find an offense gang related. (*People v. Ferraez* (2003) 112 Cal.App.4th 925, 931 [5 Cal.Rptr.3d 640] (*Ferraez*).) "[T]he record must provide some evidentiary support, other than merely the defendant's record of prior offenses and past gang activities or personal affiliations, for a finding that the *crime* was committed for the benefit of, at the direction of, or in association with a criminal street gang." (*People v. Martinez* (2004) 116 Cal.App.4th 753, 762 [10 Cal.Rptr.3d 751] (*Martinez*).)

In *People v. Albarran* (2007) 149 Cal.App.4th 214 [57 Cal.Rptr.3d 92] (*Albarran*), the trial court denied a defense pretrial motion to exclude evidence of the defendant's gang affiliation and other gang evidence in his trial for attempted murder, shooting at an inhabited dwelling, and kidnapping for carjacking, all of which were alleged to have been committed for the benefit of a criminal street gang. (*Id.* at p. 217.) After the jury found the gang enhancements true, the trial court granted a motion for new trial as to the gang enhancements, finding sufficient evidence did not support the true findings. (*Ibid.*) The defendant thereafter filed a motion for new trial as to the substantive charges, alleging he had been prejudiced by the admission of the gang evidence. The court denied the motion, noting that the gang evidence was relevant to the issues of the defendant's motive and intent in committing the underlying crimes. (*Ibid.*)

The appellate court reversed the judgment and remanded the matter for a new trial on the substantive offenses, concluding that the People had failed to present sufficient evidence that the crimes were gang motivated. (*Albarran, supra*, 149 Cal.App.4th at pp. 217, 232.) At trial, "[t]he prosecutor argued the case presented a 'classic' gang shooting and that the entire purpose of the shooting was to gain respect and enhance the shooters' reputations within the gang community, and to intimidate the neighborhood—essentially to 'earn one's bones' within the gang. The prosecutor noted, however, that he had no percipient witness or evidence to prove the crime was gang related or motivated, but instead would be relying on testimony of the sheriff's gang expert . . . who was most familiar with [the defendant] and his gang . . . ." (*Id.* at p. 219.)

The People's gang expert testified as to his numerous contacts with the defendant, the defendant's admission to gang membership, the defendant's gang tattoos, and gang graffiti at the defendant's home. (*Albarran, supra*, 149 Cal.App.4th at p. 220.) The expert conceded that there was no direct evidence of the defendant's specific purpose in committing the offenses or that they were at all related to the defendant's gang: "[T]here was no evidence in this case that any of the shooters had made themselves known—the shooters made no announcements, did not throw any gang signs and there was no graffiti referring to the crime." (*Id.* at p. 221.) Nonetheless, the expert opined that the crimes were gang related because they were committed within the gang's territory, they occurred at a party when gang crimes are often committed, and more than one shooter was involved. In the expert's opinion, the crimes would benefit the gang because the gang members would gain respect within the gang by word of mouth and the offense would serve to intimidate people. (*Ibid.*)

The court concluded that despite evidence that the defendant was a gang member, the motive for the underlying crimes "was not apparent from the circumstances of the crime." (*Albarran, supra*, 149 Cal.App.4th at p. 227.) The expert's contention that gang members gain respect and enhance their status within their gang by committing crimes did not support the conclusion that the defendant's offenses were gang related, because there was no evidence that any of the gang members presented signs of gang membership or announced their presence, before or after the offenses. Likewise, there was no evidence of gang members bragging about their involvement in the crimes or creating graffiti to take credit for them. Thus, the fact of a defendant's gang membership alone could not sustain the inference that a crime committed by that defendant was gang related, despite an expert witness's testimony to the contrary. (*Ibid.*)

In *Ferraez, supra*, 112 Cal.App.4th 925, the defendant was arrested at a swap meet for possession of rock cocaine for sale. (*Id.* at p. 928.) The defendant told the arresting officer that he had acquired permission to sell drugs from the gang who claimed the swap meet as its territory. The defendant admitted to being a gang member, had made previous such admissions, had a gang moniker, had a gang tattoo, had received five California STEP (Street Terrorism Enforcement and Prevention) Act (§ 186.20 et seq.) notices, and had been on probation with gang terms. (112 Cal.App.4th at pp. 928–929.) However, the defendant asserted that he was not selling the drugs for the gang, but was doing so for personal, economic reasons. The prosecution's gang expert opined that, based on a hypothetical identical to the facts of the case, the defendant intended to sell the drugs for the benefit of, or in association with, the gang. (*Id.* at p. 928.) He testified that the proceeds "would be used to benefit the gang through the purchase of weapons or narcotics, or as bail for a fellow gang member. He also testified that the sale of drugs promotes, furthers, and assists criminal conduct by the gang." (*Ibid.*)

The appellate court upheld the jury's finding that the crime was committed to benefit or assist a criminal street gang. (*Ferraez, supra*, 112 Cal.App.4th at pp. 927–928.) However, the court noted that "[u]ndoubtedly, the expert's testimony alone would not have been sufficient to find the drug offense was gang related. But here it was coupled with other evidence from which the jury could reasonably infer the crime was gang related." (*Id.* at p. 931.) This "other evidence" included the facts that the defendant was selling the drugs in gang territory, had gained the gang's permission to sell the drugs, and his admissions regarding gang membership and associations. (*Ibid.*) Thus, it suggested that expert testimony alone, without an underlying evidentiary foundation for that testimony, would be insufficient to justify a true finding on a gang enhancement.

In *In re Frank S.* (2006) 141 Cal.App.4th 1192 [46 Cal.Rptr.3d 839], an officer detained the minor when he failed to stop at a red traffic light while riding his bicycle. The officer discovered a knife, a bindle of methamphetamine, and a red bandana on the minor. The People charged the minor with carrying a concealed dirk with a corresponding gang enhancement, as well as other charges. (*Id.* at p. 1195.) The prosecution's gang expert testified that the minor was a gang member and that the substantive offense was committed to benefit his gang. She testified that "a gang member would use the knife for protection from rival gang members and to assault rival gangs." (*Ibid.*)

The appellate court reversed the enhancement, finding that "nothing besides weak inferences and hypotheticals show the minor had a gang-related purpose for the knife." (*In re Frank S., supra*, 141 Cal.App.4th at p. 1199.) "[U]nlike in other cases, the prosecution presented no evidence other than the expert's opinion regarding gangs in general and the expert's improper opinion on the ultimate issue to establish that possession of the weapon was 'committed for the benefit of, at the direction of, or in association with any criminal street gang . . . .' [Citation.] The prosecution did not present any evidence that the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense. In fact, the only other evidence was the minor's statement to the arresting officer that he had been jumped two days prior and needed the knife for protection. To allow the expert to state the minor's specific intent for the knife without any other substantial evidence opens the door for prosecutors to enhance many felonies as gang-related and extends the purpose of the statute beyond what the Legislature intended." (*Ibid.*) Thus, again, something more than an expert witness's unsubstantiated opinion that a crime was committed for the benefit of, at the direction of, or in association with any criminal street gang is required to justify a true finding on a gang enhancement.

More recently, the court in *People v. Ramon* (2009) 175 Cal.App.4th 843 [96 Cal.Rptr.3d 459] (*Ramon*), analyzed the sufficiency of the evidence on the specific intent prong of gang enhancement findings and found it wanting. Officers stopped the defendant, a conceded gang member, while he was driving a stolen vehicle within his gang's territory with a fellow gang member in the passenger seat. (*Id.* at pp. 846–847.) Officers found a loaded, unregistered firearm under the driver's seat. (*Id.* at pp. 846–848.) The People charged the defendant with receiving a stolen vehicle, possession of a firearm by a felon, possession of a firearm while an active gang member, and carrying a loaded firearm in public for which he was not a registered owner, as well as corresponding gang enhancements. (*Id.* at p. 848.)

At trial, an expert gang witness testified that one of the gang's primary activities was car theft. (*Ramon, supra*, 175 Cal.App.4th at p. 847.) He opined that by driving a stolen vehicle and bearing an unregistered firearm within his gang's territory, the defendant could conduct numerous crimes and simply dump the vehicle and gun thereafter, having no ties to them. (*Id.* at pp. 847–848.) Both could be used to spread fear and intimidation within the gang's territory. (*Id.* at p. 848.) In response to a hypothetical mirroring the facts of the case, the expert concluded that the defendant's crimes would

benefit his gang. The jury convicted the defendant of all the substantive counts and found true three of the four gang enhancement allegations. (*Ibid.*)

The appellate court vacated the gang enhancements, concluding that the only "evidence" supporting an inference that the defendant committed the instant crimes with the specific intent to promote, further, or assist criminal conduct by gang members was the witnesses's impermissible speculation: "The People's expert simply informed the jury of how he felt the case should be resolved. This was an improper opinion and could not provide substantial evidence to support the jury's finding. There were no facts from which the expert could discern whether [the defendant and his compatriot] were acting on their own behalf the night they were arrested or were acting on behalf of [their gang]."[6] (*Ramon, supra*, 175 Cal.App.4th at p. 851.) Thus, again, some substantive factual evidentiary basis, not speculation, must support an expert witness's opinion.[7]

 Here, carjacking is a crime, but not one that is necessarily gang related. As in *Martinez* and *Albarran*, nothing in the circumstances of the

---

[6] Though we note that by possessing a stolen vehicle and bearing the gun himself, the defendant was, at a minimum, as a gang member himself, doing so with the specific intent to promote, further, or assist criminal conduct by gang *member(s)* (himself and perhaps his passenger). *Ramon* conspicuously and tellingly later appears to suggest that the People were required to prove that the defendant acted with the specific intent of assisting his gang, not gang members: "The issue in the gang enhancement context was whether [the defendant] was acting with the specific intent of assisting his *criminal street gang*" (*Ramon, supra*, 175 Cal.App.4th at p. 853, italics added), and "in order to sustain the People's position, we would have to hold as a matter of law that two gang members in possession of illegal or stolen property in gang territory are acting to promote *a criminal street gang*." (*Ibid.*, italics added.) However, the statute requires only that a defendant act "with the specific intent to promote, further, or assist in any criminal conduct by *gang members* . . . ." (§ 186.22, subd. (b), italics added.) We would find the evidence in *Ramon* sufficient to meet the specific intent prong of the statute.

[7] Although *Ramon* later notes, "[t]he analysis might be different if the expert's opinion had included 'possessing stolen vehicles' as one of the activities of the gang. That did not occur and we will not speculate." (*Ramon, supra*, 175 Cal.App.4th at p. 853.) We find *Ramon*'s dicta unpersuasive for application in this case for several reasons: (1) *Ramon* was analyzing the specific intent prong of the statute, not the prong at issue here; (2) no testimony was adduced in the present case that carjacking or possession of firearms was one of the gang's activities, although there was testimony that its "signature" crime was vehicle theft; (3) expert testimony was adduced in *Ramon* that "theft" and "car theft" were primary activities of the gang, but the court concluded that this would not inherently involve the lesser offense of possession of stolen property; and (4) although all gangs regularly commit certain crimes, the fact that an individual gang member commits one of those crimes by himself is not substantial evidence that he did so for the benefit of, at the direction of, or in association with the gang, even if it is the gang's "signature" crime. Ultimately, the fact in *Ramon* that the defendant had a fellow gang member in the stolen vehicle with him would support a finding that he acted in association with the gang. (*People v. Morales* (2003) 112 Cal.App.4th 1176, 1196 [5 Cal.Rptr.3d 615] [Fourth Dist., Div. Two].)

instant offenses sustain the expert witness's inference that they were gang related. While there was testimony that car *theft* was Moreno Valley 13's "signature" crime and that carjacking is a "signature" crime of gangs in general, there was also an express acknowledgment that carjacking is different from mere car theft. ■ In an evidentiary context, " '[r]eaching a conclusion that offenses are signature crimes requires a comparison of the degree of distinctiveness of shared marks with the common or minimally distinctive aspects of each crime.' " (*People v. Earle* (2009) 172 Cal.App.4th 372, 394 [91 Cal.Rptr.3d 261].) Here, the People adduced no evidence that Moreno Valley 13 committed car thefts in a manner distinctive from other car thefts and that defendant did so in the current case, as well.

■ There was no evidence that *only* gang members committed carjackings or that a gang member could not commit a carjacking for personal benefit, rather than for the benefit of the gang. Indeed, two of the People's witnesses testified that gang members can commit crimes on their own without benefitting the gang. While the sergeant effectively testified that carjacking by a gang member would always be for the benefit of the gang, this " 'did nothing more than [improperly] inform the jury how [the expert] believed the case should be decided,' " without any underlying factual basis to support it. (*In re Frank S., supra*, 141 Cal.App.4th at p. 1197, quoting *People v. Killebrew* (2002) 103 Cal.App.4th 644, 658 [126 Cal.Rptr.2d 876].)

Defendant did not call out a gang name, display gang signs, wear gang clothing, or engage in gang graffiti while committing the instant offenses. There was no evidence of bragging or graffiti to take credit for the crimes. There was no testimony that the victim saw any of defendant's tattoos. There was no evidence the crimes were committed in Moreno Valley 13 gang territory or the territory of any of its rivals.[8] There was no evidence that the victim of the crimes was a gang member or a Moreno Valley 13 rival. Defendant did not tell anyone, as the defendant did in *Ferraez*, that he had special gang permission to commit the carjacking. (*Ferraez, supra*, 112 Cal.App.4th at p. 928.) Defendant was not accompanied by a fellow gang member.

While the sergeant testified that the carjacking could benefit defendant's gang in a number of ways, he had no specific evidentiary support for drawing such inferences. Indeed, he admitted that there was no indication that defendant had used the vehicle to transport other gang members. There was no testimony that defendant used the vehicle to transport drugs or manifested

---

[8] At the first trial, the People's gang expert definitively testified that the crime was *not* committed in Moreno Valley 13 gang territory.

any intention to do so. While the sergeant testified that defendant may have been motivated to commit the instant crimes in order to exact retaliation against another individual, he failed to provide any evidentiary support for this conclusion. There was never any suggestion that the alleged victim of the brandishing charge was a rival gang member or had committed any offenses against defendant or his gang.[9] The sergeant's testimony, as to how defendant's crimes would benefit Moreno Valley 13, was based solely on speculation, not evidence. An appellate court cannot affirm a conviction based on speculation, conjecture, guesswork, or supposition. (*People v. Marshall* (1997) 15 Cal.4th 1, 35 [61 Cal.Rptr.2d 84, 931 P.2d 262]; *People v. Morris* (1988) 46 Cal.3d 1, 21 [249 Cal.Rptr. 119, 756 P.2d 843], overruled on another point in *In re Sassounian* (1995) 9 Cal.4th 535, 543 [37 Cal.Rptr.2d 446, 887 P.2d 527]; *People v. Cluff* (2001) 87 Cal.App.4th 991, 1002 [105 Cal.Rptr.2d 80].)

While it is true that the carjacking victim testified that he believed "a little" that defendant may have been a gang member, it is difficult to imagine how that would benefit Moreno Valley 13 because the victim did not know to which gang, if any, defendant may have belonged. The gang enhancement cannot be sustained based solely on defendant's status as a member of the gang and his subsequent commission of crimes. (*Albarran, supra*, 149 Cal.App.4th at pp. 227–228.)

The People cite *People v. Gardeley* (1996) 14 Cal.4th 605, 618–619 [59 Cal.Rptr.2d 356, 927 P.2d 713], *People v. Hodgson* (2003) 111 Cal.App.4th 566, 572 [3 Cal.Rptr.3d 575] (*Hodgson*), *People v. Ramon T.* (1997) 57 Cal.App.4th 201, 208 [66 Cal.Rptr.2d 816], *People v. Castenada* (2000) 23 Cal.4th 743, 745, 752–753 [97 Cal.Rptr.2d 906, 3 P.3d 278] (*Castenada*), and

---

[9] We are not suggesting that, in order for a true finding on a gang enhancement to be upheld, the victim must be a gang member, rival or otherwise. Rather, we are merely noting that had the brandishing victim in this case been a gang member, this would have constituted some evidence that defendant's prior crimes were committed for a gang purpose, i.e., to obtain the vehicle in order to exact subsequent revenge on someone else *on behalf of the gang*. Of course, even if the brandishing victim was not a gang member, substantial evidence would have supported the true findings on the prior offenses if defendant had been shown, in some other manner, to have had a gang purpose in mind when he committed the latter offense, e.g., by shouting his gang name, throwing gang signs, or otherwise demonstrating that he was seeking to intimidate the brandishing victim on his gang's behalf. The hypothetical evidentiary chain of causation would be that defendant stole the vehicle from the first victim in order to utilize it to commit crimes to benefit the gang thereafter by intimidating subsequent victims *who knew the crime was being committed in the name of defendant's gang*. Of course, as noted above, no substantive evidence, other than the officer's hearsay testimony, was adduced at the second trial on the gang enhancements regarding the brandishing offense at all, let alone evidence sufficient to infer that it was gang related. Thus, even on the more expansive view of the evidence presented at the first trial, there was no evidentiary support for a conclusion that any "retaliation" was anything but personal to defendant. Moreover, the jury at the first trial hung on the brandishing charge and the court subsequently dismissed the charge upon the People's motion. (See fn. 4, *ante*.)

*People v. Morales, supra,* 112 Cal.App.4th at pages 1179–1182, 1197–1199, for the proposition that defendant's gang membership and the expert witnesses' testimonies in this case were sufficient to support the jury's findings. We find the People's citations inapposite. While the court in *Gardeley* noted the propriety of using an expert to "render opinion testimony on the basis of facts given 'in a hypothetical question that asks the expert to assume their truth,' " it also warned that courts should exercise discretion to ensure " 'against the risk that the jury might improperly consider [expert opinion testimony] as independent proof of the facts recited therein.' [Citation.]" (*Gardeley,* at pp. 618–619.) Here, the prosecutor did not pose any hypothetical to the gang expert, but essentially asked him the impermissible question of whether the particular crimes were committed to benefit defendant's gang. Thus, the prosecutor's questions posed precisely the danger warned of in *Gardeley.* Moreover, the issue facing the court in *Gardeley* was whether the "pattern of criminal gang activity" prong of the enhancement required that the People demonstrate the predicate offenses were gang related, not whether substantial evidence supported the contention that the substantive offense was committed for the benefit of the gang. (*Id.* at p. 610.)

In *Hodgson,* the court's factual and procedural recitation does indeed reflect that a gang expert concluded that the crimes of robbery and murder were committed for the benefit of the gang and that the jury found the gang allegations true—a finding that was affirmed on appeal. (*Hodgson, supra,* 111 Cal.App.4th at pp. 572–573, 580.) However, *Hodgson* does not support the People's position because only the unpublished portion of the decision addressed the sufficiency of the evidence with regard to the jury's finding that the defendant's crimes were committed for the benefit of a criminal street gang. (*Id.* at pp. 566, 580.) Thus, *Hodgson* is not citable case authority for the People's position. (Cal. Rules of Court, rule 8.1115.) In any event, even if the People's citation to the factual statement in that case is appropriate in this context, opinions are not authority for propositions not considered. (*People v. Campbell* (1999) 76 Cal.App.4th 305, 309 [90 Cal.Rptr.2d 315].)

At issue in *Castenada* was not whether the defendant's offense was for the benefit of his criminal street gang, but whether he was an active participant in the gang. (*Castenada, supra,* 23 Cal.4th at pp. 745, 752–753.) Thus, the case concerned the defendant's conviction for a separate offense carrying a different penalty than that at issue here (§ 186.22, subd. (a)). (*Castenada,* at pp. 752–753.) In *People v. Morales, supra,* 112 Cal.App.4th 1176, this court held that the foundational fact permitting the true finding on the gang enhancement was the defendant's commission of the offense *in association with a fellow gang member.* (*Id.* at p. 1196.) Similarly, in *Ramon T.,* the court

noted that the defendant "tacitly concede[d] that [his] crimes may have been committed 'in association with' " two other gang members. (*People v. Ramon T., supra*, 57 Cal.App.4th at pp. 207–208.) The court ultimately concluded that "a series of assaults and batteries committed to free a gang member . . . from the grasp of an officer effecting a lawful arrest strikes us as having unequivocally been committed with the intent of promoting, furthering *and* assisting in the criminal conduct of all three juveniles." (*Id.* at p. 208.) Here, defendant committed the offenses alone. Thus, none of the People's cited cases support the contention that evidence a gang member committed a crime alone combined with an expert witness's unsubstantiated opinion that the crime was committed for the benefit of the gang is sufficient to find gang enhancement allegations true. Substantial evidence, therefore, did not establish that defendant committed the carjacking or possessed the firearm to benefit his gang.

B., C.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### III.

### DISPOSITION

The convictions on the gang enhancement allegations attached to counts 1 and 3 are reversed. The prior prison term enhancements are stricken. The trial court is directed to award defendant 1,051 days of total custody credits consisting of 914 actual and 137 conduct days. The trial court is directed to prepare an amended abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation. The judgment is affirmed in all other respects.

Gaut, J., concurred.

**RAMIREZ, P. J.,** Dissenting.—I respectfully dissent.

I respectfully disagree with the conclusion reached by the majority that there is insufficient evidence to support the jury's findings that the carjacking and possession of a firearm by an ex-felon were committed to benefit defendant's gang.[1]

---

*See footnote, *ante*, page 650.

[1] As a preliminary matter, the majority fails to note (maj. opn., *ante*, at p. 652) that the first jury made true findings that defendant had personally used a firearm during the carjacking and the attempted robbery, pursuant to Penal Code section 12022.53, subdivision (b).

I add the following evidence, adduced at trial, to my discussion of this issue: Deputy Anthony Johnson testified that most gang members are afraid of the gang enhancements defendant was facing and when such enhancements are alleged against them, they "backtrack" and try to claim that they were not active in the gang. Deputy Johnson specifically related this fear to defendant by testifying that defendant, in a letter written to a fellow gang member while the former was in custody, congratulated the latter on "beating" the gang enhancement(s) brought against the latter. Sergeant Frank Assumma continued with this theme, testifying, as the majority pointed out (maj. opn., *ante*, at p. 655) that gang members do not always announce their affiliation, either by word or appearance, when committing crimes and they do this in order to avoid detection and prosecution. In fact, he added it was not often seen, *and he had never personally seen*, a theft-related crime that was announced unless it involved retaliation. He added that 99.9 percent of the time, victims cannot tell what gang a perpetrator is from because they do not see the indicators, i.e., tattoos, clothing, gang symbols, gang words, yet they know they are dealing with a gang member, just as the victim here seemed to know. He testified that even if a crime is committed by only one gang member, this does not indicate that the crime was not for the benefit of the gang, especially if the crime was, like carjacking, a signature crime for the gang and many of the gang's members committed such offenses often, as defendant's gang did.[2] He testified that a great deal of the assaultive crimes committed by gang members, i.e., the assaults, attempted murders and murders, result from rivalries between gangs, and help gangs establish and maintain turf and subdue the community in which they operate through fear, which results in a reluctance by residents to interfere in the gang's criminal activities in the area. The sergeant pointed out that defendant drove to the scene of the crimes in a car, thereby debunking any suggestion that he stole the victim's truck to

---

[2] The majority's statement that "no testimony was adduced in the present case that carjacking . . . was one of the gang's activities, although there was testimony that its 'signature' crime was vehicle theft" (maj. opn., *ante*, at p. 661, fn. 7) is belied by the record as follows,

"Q. [*By defense counsel* to Sergeant Assumma]: [E]ssentially[,] your expert testimony today . . . is . . . that this crime . . . was committed for the benefit of the gang because . . . [¶] . . . [¶] . . . he was doing this . . . 'crime' of *carjacking* because this is one of the signature crimes that gangs use; correct?

"A. [By Sergeant Assumma]: Correct."

Deputy Johnson testified that car thefts are the signature crimes for defendant's gang. When it was pointed out to him that defendant committed a carjacking, not merely a car theft, he responded that while the two crimes are different, carjacking is "[b]y definition . . . still a car theft."

The majority's attempt to graft onto the situation here the notion that two crimes must be so distinctively similar to be considered a "signature" of the defendant to permit the admission of evidence of one at the trial of another is misplaced. (Maj. opn., *ante*, at pp. 661–662.) Such a concept has no logical applicability to the knowledge of a gang expert that an offense or list of offenses constitute the signature crime or crimes of a particular gang.

provide himself transportation. The sergeant also contradicted the defense's suggestion that defendant stole the truck to support his drug habit by testifying that drug addicts do not steal vehicles to maintain their habit.[3] Finally, and most importantly, when asked if retaliation was involved in the carjacking, the sergeant answered in the affirmative, explaining that immediately after getting the truck, defendant drove it to a nearby home of a person with whom he had had previous problems, and got out, holding the shotgun. The person called the police. This contributed further to the sergeant's opinion that the carjacking had been committed to benefit defendant's gang. The sergeant pointed out that the truck was found the next day, down the street from defendant's house, without any effort having been made to conceal it, thus further suggesting that defendant had taken it in order to show up, with shotgun in hand, at the home of the person with whom he had had problems previously.

The majority notes that there was no evidence that the victim of the shotgun brandishing was a rival gang member or had committed any offense against defendant's gang. (Maj. opn., *ante*, at p. 662.)[4] However, gang members do not intimidate just rival gang members—they intimidate anyone in the community, especially those who cross them. This is their currency. Therefore, it matters little that the victim of this crime was not a member of a rival gang or had not committed a crime against defendant's gang.

*People v. Albarran* (2007) 149 Cal.App.4th 214 [57 Cal.Rptr.3d 92] (*Albarran*), which the majority cites (maj. opn., *ante*, at pp. 657–658) was not a case dealing with the sufficiency of the evidence to support a gang enhancement, as does this case. The issue in *Albarran* was whether gang evidence should have been introduced by the People in order to show motive and intent for the charged offenses. (149 Cal.App.4th at pp. 226–227.) The appellate court disagreed with the trial court's determination under Evidence Code section 352 that the probative value of the gang evidence outweighed its prejudicial impact. Without addressing the highly inflammatory nature of the particular gang evidence introduced in *Albarran* (149 Cal.App.4th at p. 220), we note that the appellate court there concluded that there was insufficient evidence to support *the prosecutor's argument* that the motive for the crime was to gain respect, enhance the shooter's reputation in the gang, and intimidate the neighborhood. (*Id.* at pp. 219, 227.) The *Albarran* court

---

[3] This was the explanation offered by the defense as to why defendant took the victim's truck.

[4] The majority's reference to matters for which evidence was not presented at the first trial (maj. opn., *ante*, at p. 655, fn. 4) is unnecessary since the jury that determined the truth of these allegations did not hear that evidence. Also unnecessary is its reference to the fact that there was testimony at the first trial that the crimes did not occur in defendant's gang's territory. (Maj. opn., *ante*, at p. 662, fn. 8.)

noted that the motive for the shooting was not apparent from the circumstances of the crime, and "[i]n the final analysis, the only evidence to support the respect motive is the fact of [defendant's] gang affiliation." (*Id.* at p. 227.) The shooting had occurred during a birthday party the victim hosted at his home for a relative. (*Id.* at p. 217.) Two male Hispanics with shaved heads fired at the front of the victim's home. (*Ibid.*) Then they fled down the street, and one jumped into the car of a neighbor of the victim's and told the neighbor to drive. (*Id.* at p. 218.) After she collided with the victim's car, the other shooter got in her car and also told her drive, but she could not. (*Ibid.*) The gang expert conceded that he did not know the exact reason for the shooting, but he had been told that members of another gang were at the party and " 'by word of mouth, word on the street,' it was known that [members of the other gang were there]." (*Id.* at pp. 220, 221.) He claimed that despite the fact that the shooters did not "announce" their gang affiliation during the shooting, people at the party "would know who was present at the party and would also know the shooters." (*Id.* at p. 221.) The gang expert concluded that the shootings were gang related because there were two shooters, gang crimes often occur at parties, the crime would intimidate people and, at the time, defendant's gang was in a gang war.[5] (149 Cal.App.4th at p. 221.) The differences between the expert testimony in *Albarran* and here are too obvious and lengthy to elaborate. To the extent language in *Albarran* would seem to suggest, as the majority appears to believe (maj. opn., *ante*, at pp. 658, 661–662), that evidence of announcing one's gang affiliation during a crime is important or crucial to a conclusion that a crime is for the benefit of a gang, the *Albarran* court did not have the advantage of Sergeant Assumma's expert testimony that gang members who commit thefts seldom, if ever, so announce, and his very rational explanation for this.

The majority cites *People v. Ferraez* (2003) 112 Cal.App.4th 925, 931 [5 Cal.Rptr.3d 640], for the proposition that an expert's testimony, alone, that a crime benefits a gang, is insufficient without other evidence from which the jury could reasonably infer the same. In *Ferraez*, the only such evidence was the fact that the defendant was selling drugs in the territory of a gang friendly to his and he admitted that he had asked the permission of this latter gang to do so.[6] However, it must be remembered that these facts had meaning only because the expert utilized them to conclude that the crime benefitted the gang. Without such interpretation by the expert, they would have meant little, if anything, to the jury, in terms of the issue it had to decide. This is why

---

[5] The expert did not testify that the gang war involved the gang whose members were supposedly at the party, nor the gang to which the victim assertedly belonged. (*Albarran, supra,* 149 Cal.App.4th at p. 221.)

[6] The only contrary evidence was, like defendant's here, Ferraez's self-serving assertion that he was selling drugs merely for his own benefit.

experts, such as Sergeant Assumma and Deputy Johnson, are necessary in gang cases. Most lay jurors do not know what significance to attach to the fact that a crime occurred in a particular spot or that a person felt the need to ask someone else's permission to commit a crime. However, evidence from which this jury could conclude the defendant committed these crimes to benefit his gang existed here. Defendant's use of the truck he stole to commit a crime and for no other purpose were undisputed facts that stood alone, without interpretation by the expert, although the expert's interpretation of it as a retaliatory act figured into his conclusion that the theft of the truck benefitted the gang.

Like in *Albarran*, the facts in *In re Frank S.* (2006) 141 Cal.App.4th 1192 [46 Cal.Rptr.3d 839], also cited by the majority (maj. opn., *ante*, at pp. 659, 660), are so dissimilar to those here that the case hardly merits mention. However, I will point out the facts upon which the expert in *Frank S.* concluded that the minor's carrying a dirk or dagger benefitted a gang: the minor, who once listed himself as an affiliate of a gang: was caught bicycling, alone, with a small bindle of methamphetamine, a concealed knife and a red bandana, then gave a false name to the arresting officer. (141 Cal.App.4th at p. 1195.) Aside from the appellate court's problems with the gang's expert's conclusion that the minor was an active gang member (*id.* at p. 1195), the expert concluded that the minor possessed the knife to protect himself, which is what a gang member would do, as well as to use it to attack rival gang members, both of which benefitted his gang. (*Id.* at pp. 1195–1196.) The appellate court concluded that "nothing besides weak inferences and hypotheticals show the minor had a gang-related purpose for the knife. [¶] . . . [T]he prosecut[or] presented no evidence other than the expert's opinion regarding gangs in general and the expert's improper opinion on the ultimate issue . . . . The prosecution did not present any evidence that the minor was in gang territory, had gang members with him, or had any reason to expect to use the knife in a gang-related offense." (*Id.* at p. 1199.) Here, in contrast, there was evidence about defendant's use of the truck for an offense involving intimidation.

Finally, *People v. Ramon* (2009) 175 Cal.App.4th 843 [96 Cal.Rptr.3d 459] (*Ramon*), which the majority cites (maj. opn., *ante*, at p. 660) is also distinguishable. *Ramon*, in the company of a fellow gang member, was found driving a stolen truck at least one day after it had been taken. (175 Cal.App.4th at pp. 846–847.) An unregistered handgun, bearing no fingerprints, was under the driver's seat. (*Id.* at p. 847.) The ignition had not been damaged and the key in it was normal. A gang expert testified that the truck was stopped in the heart of the territory controlled by defendant's gang. (*Ibid.*) The expert opined that a stolen truck and the gun could be used to engage in the list of

crimes that constituted the gang's primary activities and both could be used to spread fear and intimidation; therefore, possession of both benefitted the gang. (*Id.* at pp. 847–848.) The expert relied on the facts that two gang members were together in territory controlled by their gang, and the gun and truck could be used to commit other crimes, to conclude that the crimes benefitted the gang. (*Id.* at p. 849.) The appellate court determined that this was insufficient, saying "There were no facts from which the expert could discern whether [defendant and his fellow gang member] were acting on their own behalf . . . or . . . on behalf of the[ir gang]. While it is possible the two were acting for the benefit of the gang, a mere possibility is nothing more than speculation. . . . [¶] . . . [The facts that the two gang members were together and in their gang's territory], standing alone, are not adequate to establish that [defendant] committed the crime with the specific intent to promote, further, or assist criminal conduct by gang members. While [defendant] may have been acting with this specific intent, there is nothing in the record that would permit the People's expert to reach this conclusion. [¶] . . . [¶] . . . The issue in the gang enhancement context was whether [defendant] was acting with the specific intent of assisting his . . . gang." (*Id.* at pp. 851, 853.) The expert here, however, offered no such opinion and defendant's intent is not at issue here. Unlike in *Ramon*, here, there was evidence to contradict defendant's claim that he committed the carjacking for his own benefit.

Finally, we note the following from *Ramon*: "*The analysis might be different if the expert's opinion had included 'possessing stolen vehicles' as one of the activities of the gang.*" (*Ramon, supra,* 175 Cal.App.4th at p. 853, italics added.) Here, in contrast, the two experts testified that not only was carjacking one of the primary activities of defendant's gang, it was one of its "signatures." Thus, *Ramon* does not support the majority's conclusion.[7]

---

[7] The majority seeks to avoid the impact of this statement in *Ramon* by claiming that the opinion dealt only with the issue of defendant's intent and not with whether his crimes benefitted the gang. (Maj. opn., *ante,* at p. 661, fn. 7.) First, the majority is incorrect. *Ramon* dealt with both issues. ("The [Penal Code] section 186.22[, subdivision] (b)(1) enhancement requires the jury to find that the crime was committed for the benefit of a . . . gang and with the specific intent to promote the . . . gang. The only evidence on this issue was provided by the People's expert witness . . . . From the[] [facts discussed] . . . , [he] opined that the crime was committed for the benefit of the . . . gang and was intended to promote the [gang]. . . . [¶] . . . Ramon argues these facts were not sufficient to permit [the expert] to opine that the crimes were committed for the benefit of and with the specific intent to promote the . . . gang." (*Ramon, supra,* 175 Cal.App.4th at pp. 849–850.) Second, if, as the majority asserts, *Ramon* concerns only the issue of the defendant's intent to assist his gang, it has no place in the discussion of the issue here, which is the sufficiency of the evidence that the crime benefitted the gang. Finally, the majority incorrectly states that there was no evidence adduced at trial that carjacking was one of the primary and/or signature activities of defendant's gang. (See fn. 2, *ante,* at p. 666.)

Finally, the majority correctly points out that all the evidence concerning benefitting defendant's gang pertained to the carjacking and none specifically addressed his possession of the shotgun. (Maj. opn., *ante*, at p. 656, fn. 5.) However, it was his possession of the gun that facilitated the carjacking and made it particularly dangerous and intimidating. I believe the jury could reasonably infer that this violence and intimidation added to the already dangerous crime of carjacking benefitted the gang in the same way the carjacking did.