Filed 9/15/14  P. v. Williams CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DARELL DONNELL WILLIAMS,<br><br>    Defendant and Appellant. | F066902<br><br>(Super. Ct. No. BF144440A)<br><br>**OPINION** |

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Thomas S. Clark, Judge.

William W. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and John G. McLean, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Poochigian, J. and Detjen, J.

A jury convicted appellant Darell Donnell Williams of possession for sale of methamphetamine (count 1/Health & Saf. Code, § 11378) and active participation in a street gang (count 2/Pen. Code, § 186.22, subd. (a)).[1] The jury also found true a gang enhancement (§ 186.22, subd. (b)(1)), and a prior conviction enhancement (Health & Saf. Code, § 11370.2, subd. (a)) in count 1.

On March 21, 2013, the court sentenced Williams to an aggregate eight-year term consisting of the middle term of two years on count 1, a three-year gang enhancement and a three-year prior conviction enhancement on that count, and a stayed term on count 2.

On appeal, Williams contends: 1) the evidence is insufficient to sustain the jury's true finding on the gang enhancement in count 1, and 2) the evidence is insufficient to sustain his conviction in count 2 for participation in a criminal street gang. We find merit to Williams's second contention and modify the judgment accordingly. In all other respects, we will affirm.

## FACTS

On October 8, 2012, at approximately 6:48 p.m., Bakersfield Police Officers Alexander Paiz and James Jones were in a marked patrol car traveling south on Martin Luther King Boulevard when they saw Williams, Jermaine Womack and Derrick Gage walking together across the street towards the Aneese Market.[2] Williams was slightly in front of the other two men.[3] As Williams reached the curb, Officer Paiz got out of the patrol car and asked Williams if he could talk to him. Williams reached into the lower cargo pocket of his shorts, removed a cigarette box, and discarded it. He then turned

---

[1] All further statutory references are to the Penal Code, unless otherwise indicated.

[2] Both officers were former members of the gang unit. Officer Paiz was aware from his experience in that unit that the Aneese Market was in an area of high narcotics trafficking activity and that any type of narcotic could be purchased at that location.

[3] Although Williams contends he was only in the presence of Gage and Womack, Officer Jones testified that all three were walking together.

toward Paiz and asked, "What? What's up?" Officer Paiz asked Williams if he had any weapons or contraband and he replied, "No. Go ahead and check." Officer Paiz had Williams sit on the curb and went to check on the item he discarded. Inside the cigarette box he found a clear sandwich baggie that contained a substance, later determined to be methamphetamine, packaged in nine plastic bindles that had a gross weight of 3.46 grams. Officer Paiz searched Williams but did not find any paraphernalia for ingesting the methamphetamine and Williams did not appear to be under the influence of methamphetamine. Officer Paiz testified as an expert that Williams possessed the methamphetamine for sale.

Once Womack and Gage reached the curb, they walked away from the patrol car and were contacted by Officer Jones. Officer Jones searched them but eventually let them go because he did not find any contraband.

Williams was arrested and interviewed by Officer Michael Ko. Williams admitted he was still a member of the East Side Crips (ESC). When Officer Ko asked him if he still committed crimes for the gang, Williams replied, "Yes, you have to if you still want to kick it [hang out with other members of the gang]." Officer Ko also asked Williams if he was aware of the primary criminal activities of the gang and Williams replied, "Everyone has their own thing. Some sell rock, some shoot, some rob." The prosecution also presented evidence that on several occasions when Williams came into contact with police officers, he identified himself as a member of the ESC or of the Spoonie G's, a subset of the ESC.

Officer Ko testified as a gang expert that the ESC is a criminal street gang in Bakersfield that has hundreds of members whose rivals include the West Side Crips and the Country Boy Crips. The gang identifies with the color royal blue and with various letters, including E, which stands for East; ES, which stands for East Side; and ESC. The gang is engaged in an ongoing pattern of criminal activity. The primary activities of the ESC include possession of firearms, murders, armed robberies with firearms, assaults,

3

auto thefts, burglaries, sales of narcotics and possession for sale of narcotics. Possession for sale of narcotics is important to the gang because the gang makes money from the sales. It also allows them to purchase more narcotics to make more money and to purchase firearms to protect their narcotics and to commit other crimes, including robberies or shooting at rival gang members. Additionally, the money from narcotics sales allows gang members to pay their living expenses so they do not have to work and have time to commit other crimes that benefit the gang. Respect is important to an ESC gang member and can be earned by putting in "work," i.e., committing crimes. Members, however, do not earn respect for crimes they commit unless other members know they committed the crimes.

Officer Ko further testified that the Aneese Market is located within ESC territory and is a well known "stronghold hangout" for ESC gang members. Other gang members are not allowed at the market and only ESC gang members are allowed to sell drugs there. This creates an environment where ESC gang members sell narcotics at the market free from competition from other gangs and without the risk of being robbed of their narcotics.

Officer Ko testified, based on a variety of circumstances indicating gang membership, that on October 8, 2012, Williams, Womack and Gage were members of the ESC. Officer Ko also testified that Williams committed the possession for sale of methamphetamine offense for the benefit of and in association with the ESC.

**DISCUSSION**

*I. Standard of Review*

The substantial evidence standard of review applies to gang enhancements and gang participation convictions. (*People v. Martinez* (2008) 158 Cal.App.4th 1324, 1329.) "Our review of the sufficiency of the evidence is deferential. We review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid

4

value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] We focus on the whole record, not isolated bits of evidence. [Citation.] We presume the existence of every fact the trier of fact could reasonably deduce from the evidence that supports the verdict. [Citation.] If the verdict is supported by substantial evidence, we accord due deference to the verdict and will not substitute our evaluations of the witnesses' credibility for that of the trier of fact." (*People v. Killebrew* (2002) 103 Cal.App.4th 644, 660; *In re Frank S.* (2006) 141 Cal.App.4th 1192, 1196 (*Frank S.*).) Substantial evidence includes circumstantial evidence and the reasonable inferences this evidence allows. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; *People v. Ferraez* (2003) 112 Cal.App.4th 925, 930 (*Farraez*).) "We may reverse for lack of substantial evidence only if '"upon no hypothesis whatever is there sufficient substantial evidence to support"' the conviction or the enhancement." (*People v. Garcia* (2007) 153 Cal.App.4th 1499, 1508.)

## II. *Sufficiency of the Evidence to Sustain the Gang Enhancement*

To establish a gang enhancement, the prosecution must prove two elements: (1) that the crime was "committed for the benefit of, at the direction of, or in association with any criminal street gang," and (2) that the defendant had "the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) The crime must be "gang related." (*People v. Albillar* (2010) 51 Cal.4th 47, 60 (*Albillar*); *People v. Gardeley* (1996) 14 Cal.4th 605, 622, 625, fn. 12 (*Gardeley*); *People v. Castenada* (2000) 23 Cal.4th 743, 745 [gang enhancement statute "increases the punishment for some gang-related crimes"]; *People v. Mendez* (2010) 188 Cal.App.4th 47, 56 [gang enhancement statute "applies when a crime is gang related"].) "Not every crime committed by gang members is related to a gang." (*Albillar*, *supra*, at p. 60.) A defendant's mere membership in the gang does not suffice to establish the gang enhancement. (*Gardeley*, *supra*, at pp. 623-624; *Frank S.*, *supra*, 141 Cal.App.4th at p. 1199.) Rather, "'[t]he crime itself must have some connection with the activities of a

5

gang ….'" (*Frank S.*, *supra*, at p. 1199; accord, *People v. Martinez* (2004) 116 Cal.App.4th 753, 762 [§ 186.30 context].)

The prosecution must also prove "that the gang (1) is an ongoing association of three or more persons with a common name or common identifying sign or symbol; (2) has as one of its primary activities the commission of one or more of the criminal acts enumerated in the statute; and (3) includes members who either individually or collectively have engaged in a 'pattern of criminal gang activity' by committing, attempting to commit, or soliciting two or more of the enumerated offenses (the so-called 'predicate offenses') during the statutorily defined period." (*Gardeley*, *supra*, 14 Cal.4th at p. 617, italics omitted.) Williams does not challenge the evidence concerning these last three elements, and thus implicitly concedes the sufficiency of the evidence supporting them.

"[T]o prove the elements of the criminal street gang enhancement, the prosecution may … present expert testimony on criminal street gangs." (*People v. Hernandez* (2004) 33 Cal.4th 1040, 1047-1048; *Ferraez*, *supra*, 112 Cal.App.4th at p. 930 ["It is well settled that expert testimony about gang culture and habits is the type of evidence a jury may rely on to reach a … finding on a gang allegation"].) "'Generally, an expert may render opinion testimony on the basis of facts given "in a hypothetical question that asks the expert to assume their truth." [Citation.] Such a hypothetical question must be rooted in facts shown by the evidence, however.'" (*People v. Ward* (2005) 36 Cal.4th 186, 209.) But "[a] gang expert's testimony alone is insufficient to find an offense gang related." (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 657 (*Ochoa*).) Rather, the expert testimony must be accompanied by some substantive factual evidentiary basis from which the jury could reasonably infer the crime was gang related. (*Id*. at p. 660 ["something more than an expert witness's unsubstantiated opinion that a crime was committed for the benefit of, at the direction of, or in association with any criminal street gang is required to justify a true finding on a gang enhancement"]; *People v. Ramon*

6

(2009) 175 Cal.App.4th 843, 852 (*Ramon*); *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198; *Ferraez*, *supra*, 112 Cal.App.4th at p. 931.)

### A. *First Element*

As we have explained, the first element of the gang enhancement may be satisfied by any one of three prongs, i.e., the crime was committed for the benefit of, at the direction of, or in association with a criminal street gang. (§ 186.22, subd. (b)(1).) Williams contends the evidence is insufficient to sustain this element because all it showed was that he was an ESC gang member and that he was walking in ESC territory in the presence of two other ESC gang members. We disagree.

Here, Williams admitted to Officer Ko that he was an ESC gang member, that he still committed crimes for them, and that some gang members sell drugs for the gang. At the time, Williams was in possession of nine bindles of methamphetamine, he was walking towards a market where ESC gang members exclusively sold drugs under the auspices of the ESC, and he was accompanied by two gang members who would be able to verify that he was "putting in work" for the gang. The obvious inference from these circumstances is that Williams was going to the Aneese Market to sell drugs for the ESC.

Officer Ko testified that the sale of drugs by gang members benefited ESC because it allowed gang members to make money which they could use to buy more drugs to make still more money and firearms to protect their drugs and to commit other crimes for the benefit of the gang. He also testified that it allowed gang members to pay their living expenses so they would not have to work and would have time to commit other crimes that benefitted the ESC. Because money was important to the ESC, because the Aneese Market was within ESC territory and ESC gang members exclusively sold drugs there, and because Williams was accompanied by fellow gang members who could confirm that he put in work for the gang, it was reasonable to infer that Williams was selling drugs either under the ESC's direction or with its permission. From this evidence, a jury could reasonably infer Williams acted in association with the ESC in possessing

7

for sale the methamphetamine found on his person and/or that the money he would make from selling methamphetamine was going to benefit the ESC. Thus, the first element was satisfied.

Williams relies on *Ochoa, supra,* 179 Cal.App.4th 650 and this court's opinion in *Ramon, supra,* 175 Cal.App.4th 843 to contend the evidence is insufficient to prove this element. Both cases, however, are inapposite.

In *Ochoa*, the court reversed because, although the expert testified that the carjacking offense committed by the defendant in that case could benefit the defendant's gang in a number of ways, unlike the instant case, nothing in the circumstances of the crime supported the expert's inference that the crime was gang related. (*Ochoa, supra,* 179 Cal.App.4th at pp. 661-662) In *Ramon*, this court found that two gang members possessing a stolen vehicle and an unregistered firearm in gang territory was insufficient to support the expert's testimony that the offense was committed for the benefit of the gang. Reversal occurred in *Ramon* because the record did not contain any facts from which the expert could discern whether the defendants were acting on their own behalf when they committed the underlying offenses or were acting on behalf of the gang. (*Ramon*, *supra*, 175 Cal.App.4th at pp. 849, 851.) Here, as summarized above, there were additional facts that support the expert's conclusion that Williams was acting for the benefit of or in association with the ESC. (Cf. *Ferraez, supra,* 112 Cal.App.4th at pp. 929-931 [evidence that defendant sold drugs in other gangs territory with that gang's permission sufficient to sustain finding that defendant sold drugs in association with a gang as proscribed by § 186.22, subd. (b)(1)].)

### B. Second Element

Williams also contends the evidence was insufficient to prove he had the specific intent to benefit the ESC gang. He argues that the mere possession of contraband in ESC territory while in the presence of other gang members, which Williams claims was the sole evidence presented on the issue, did not constitute substantial evidence of the second

8

element, i.e., that defendant acted with "the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) Williams is wrong.

The mental element of the gang enhancement requires substantial evidence from which a jury can infer that in committing the gang-related criminal act, the defendant specifically intended to engage in or promote criminal gang conduct. (*Albillar, supra,* 51 Cal.4th at p. 68.) A finding of specific intent requires a subjective desire. (See 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 5, p. 204.) However, "[i]ntent is rarely susceptible of direct proof and usually must be inferred from the facts and circumstances surrounding the offense." (*People v. Pre* (2004) 117 Cal.App.4th 413, 420.)

"There is no requirement in section 186.22, subdivision (b), that the defendant's intent to enable or promote criminal endeavors by gang members must relate to criminal activity apart from the offense the defendant commits. To the contrary, the specific intent required by the statute is 'to promote, further, or assist in *any* criminal conduct by gang members.' [Citation.] Therefore, defendant's own criminal [act] qualifie[s] as the gang-related criminal activity.… [¶] … [T]here is no requirement in section 186.22 that the crime be committed with the intent to enable or further any other crime .…" (*People v. Hill* (2006) 142 Cal.App.4th 770, 774.) This is not to say, however, that a gang member's intent to merely commit the crime that promotes his own criminal act suffices to establish the specific intent required by the statute. But when the circumstances surrounding the crime establish that the crime itself was related to the activities of the gang, an inference of specific intent to promote criminal conduct by gang members reasonably may be drawn. (See *Frank S.*, *supra,* 141 Cal.App.4th at p. 1199.)

A reasonable jury could infer from the circumstances of Williams's crime and the customs and priorities of the ESC that defendant intended his drug sales to have the effect of providing income for the ESC. This income, the expert testified, provided the ESC with the opportunities to further their criminal interests by purchasing more drugs or

9

weapons for the commission of other crimes.  Thus, sufficient evidence supported the mental element of the gang enhancement.**4**

### III. *Sufficiency of the Evidence to Support Williams's Conviction For Participating in a Criminal Street Gang*

Williams contends the evidence is insufficient to sustain his conviction for participating in a criminal street gang in violation of section 186.22, subdivision (a) because it failed to show that he promoted, furthered, or assisted in felonious conduct by members of a gang.  Respondent concedes and we agree.

"[S]ection 186.22(a), which punishes '[a]ny person who actively participates in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and who willfully promotes, furthers, or assists in any felonious criminal conduct by members of that gang....'  [¶]  The elements of the gang participation offense in section 186.22(a) are:  First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang.  [Citation.]  A person who is not a member of a gang, but who actively participates in the gang, can be guilty of violating section 186.22(a). (§ 186.22, subd. (i).)  The offense is punishable as a felony with a state prison term of 16 months, two years, or three years, or as a misdemeanor.  (§ 186.22(a).)" (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130, fn. omitted (*Rodriguez*).)

In *Rodriguez,* the Supreme Court held that section 186.22, subdivision (a) does not apply to a defendant who acts alone. (*Rodriguez*, *supra*, 55 Cal.4th at p. 1139.) Accordingly, since there was no evidence that Williams acted in concert with others in

---

**4**      Williams relies on *Ramon* and *Ochoa* to also contend there was no evidence that he had the requisite intent.  However, those cases are inapposite because, as noted earlier, in each case the evidence failed to establish the appellant committed a criminal offense for the benefit of or in association with a gang.

possessing the methamphetamine, we hold that the evidence does not support his conviction for active participation in a gang in violation of section 186.22, subdivision (a).

## DISPOSITION

Williams's conviction for active participation in a criminal street gang in violation of section 186.22, subdivision (a) is reversed and the stayed term imposed on that count is stricken. The trial court is directed to prepare an amended abstract of judgment that is consistent with this opinion and to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.