Filed 5/15/13  P. v. Johnson CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B240370 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. Nos. BA378893, TA120799) |
| v. | |
| RONNELD JOHNSON et al., | |
| Defendants and Appellants. | |

APPEAL from judgment of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Modified and affirmed.

Rachel Varnell, under appointment by the Court of Appeal, for Defendant and Appellant Ronneld Johnson.

Katharine Eileen Greenebaum, under appointment by the Court of Appeal, for Defendant and Appellant Jonathan King.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II, Kathy S. Pomerantz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Ronneld Johnson and Jonathan King appeal from the judgment entered after their jury conviction of second degree robbery. Appellants argue the gang allegations were not supported by substantial evidence. We disagree. Additionally, King argues, and we agree, that two prior prison term enhancements should have been stricken rather than stayed. We modify the judgment as to King and, as modified, affirm the judgment as to both appellants.

## FACTUAL AND PROCEDURAL SUMMARY

On November 9, 2011, the victims Adan Guerrero and Gerardo Coronado were doing landscaping work at a house in the area of 111th and Anzac or Grape Streets in Southeast Los Angeles. Guerrero was outside the house. Appellants drove by twice in a black two-door Buick Riviera without license plates. They then pulled into an alley next to the house and approached Guerrero, who grabbed a shovel for protection. One of them said, "'Put that shit down.'" Johnson pointed a semiautomatic gun in Guerrero's face and demanded his wallet, while King snatched Guerrero's gold chain.

Afterwards, Johnson jumped over a low fence enclosing the house, pointed the gun at Coronado, who was behind the fence, and took Coronado's wallet. Meanwhile, King asked Guerrero for his money, and Guerrero gave him $15 and a cell phone. Johnson jumped back over the fence, approached Guerrero with the gun and said, "'Get the fuck back.'" One of the appellants said, "'Hurry up cuz,'" but Guerrero was unsure whether that was directed at him or the other appellant. They then got back into the car and left.

Guerrero reported the robberies to police. The next day, appellants were observed in a black Buick with yellow paper plates at 114th Street and Gorman Avenue, in the area of the Imperial Courts Housing Project. They were pulled over, and a semiautomatic gun was recovered from the car's engine block.

In an information filed in December 2011, each appellant was charged with two counts of second degree robbery (Pen. Code, § 211),[1] stemming from the robberies that occurred on November 9, 2011. Gang and gun enhancement allegations were attached to these counts as to both appellants. (§§ 186.22, subd. (b)(1)(C); 12022.53, subd. (b) & (e)(1).) A third count of second degree robbery was alleged as to Johnson, stemming from a separate robbery that occurred on September 23, 2011.[2] Each appellant was alleged to have suffered one prior strike conviction. (§§ 1170.12, subd. (a)-(d), 667, subd. (b)-(i).) In addition, King was alleged to have suffered one prior serious felony conviction (§ 667, subd. (a)(1)) and two other convictions for which he served prison terms (§ 667.5, subd. (b)).

In March 2012, a jury found appellants guilty as charged and found the gang and gun allegations to be true. The trial court found the prior conviction and prison term allegations to be true. The court denied appellants' oral motions to strike their prior strike convictions.

Johnson was sentenced to an aggregate term of 28 years, eight months. The sentence consisted of the upper term of five years, doubled to 10 years pursuant to the Three Strikes law, plus 10 years for the gun enhancement as to count 1; one year (one-third midterm), doubled to two years pursuant to the Three Strikes law, plus three years, four months (one-third of 10 years) for the gun enhancement as to count 2, all to run consecutive to the sentence on count 1; and one year, doubled to two years pursuant to the Three Strikes law, as to count 3, to run consecutive to the sentence on count 2. In addition, the court found Johnson in violation of probation in another case, and sentenced him to a 16-month term to run consecutive to the sentence in this case.

King was sentenced to a total of 30 years, 4 months in prison. The sentence consisted of five years, doubled to 10 years pursuant to the Three Strikes law, plus 10

_____

[1] All statutory references are to the Penal Code.

[2] Since no issue is raised as to count 3 on appeal, we do not review the evidence supporting Johnson's conviction on that count.

3

years for the gun enhancement as to count 1; one year, doubled to two years pursuant to the Three Strikes law, plus three years, four months for the gun enhancement as to count 2; plus five years pursuant to section 667, subdivision (a)(1), to run consecutive to the sentence on count 1. The court stayed the sentences on King's two prior prison term enhancements (§ 667.5, subd. (a)).

The court did not impose a separate section 186.22 gang enhancement on either appellant because section 12022.53, subdivision (e)(2) prohibited the imposition of the enhancement in this case.[3]

This timely appeal followed.

## DISCUSSION

### I

The gun enhancement, based on section 12022.53, subdivision (e)(1), was predicated on a violation of section 186.22, subdivision (b)(1). That statute applies to "any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." Appellants argue the jury's true findings on the gang allegations are not supported by substantial evidence.

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Wilson* (2008) 44 Cal.4th 758,

---

[3] Section 12022.53, subdivision (e)(1) allows the imposition of a 10-year gun enhancement on a principal who violated section 186.22, subdivision (b) (which contains gang enhancement provisions) if any principal personally used a gun during the commission of the crime. Section 12022.53, subdivision (e)(2) prohibits the imposition of a gang enhancement in addition to the gun enhancement under subdivision (e)(1) unless a defendant personally used a gun. Here, gun use was alleged, and the jury found it to be true, as to both appellants solely as principals.

4

806.) We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence. (*Ibid*.) If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' (*Ibid*.)" (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60 (*Albillar*).)

### A. Gang Evidence

King was a self-admitted long-time member of the Project Watts Crips. His numerous tattoos, including those on his face and hands, were consistent with his membership in that gang. Johnson had self-identified as a member of the 58th Street Neighborhood Crips in 2006. Tattoos on his body, including his hands, identified him as a member of the East Coast Crips.

The prosecution gang expert, Officer Jose Carias, testified the Project Watts Crips is a predominantly African American gang that has about 350 members. It claims a territory bounded by Alameda Street on the east, Santa Ana Boulevard on the north, Wilmington Avenue on the west, and Imperial Highway on the south. Its "hub" is the Imperial Courts Housing Project. Robbery is among the primary activities of the Project Watts Crips.

Officer Carias testified gang members typically commit crimes together, and it is not uncommon for members of different Crips sets to join in the commission of crimes. Although the officer did not recall any specific examples of such alliances, he explained that members of different Crips sets sometimes have family ties or are friends from school or juvenile hall and commit crimes together.

Officer Carias explained that gang culture has evolved, and "the norm nowadays" is that gang members commit crimes without shouting out their gang names or throwing out hand signs. They refrain from announcing their gang affiliation to avoid assisting police in identifying them.

5

When asked a hypothetical question based on the facts of this case, Officer Carias opined the robberies were committed primarily for the benefit of the Project Watts Crips because the area of 111th, Anzac, and Grape Streets, where the robberies were said to have occurred, is within that gang's territory. The officer agreed that the territory claimed by the East Coast Crips was four or five miles away. He stated that "cuz" was a word commonly used by Crips gang members, and it identified appellants as Crips. He noted that the fact appellants took their time to rob two different victims in broad daylight without attempting to hide their identities indicated their comfort level within gang territory. The officer explained that violent crimes instill fear in the community and bestow respect on the gang member and the gang itself. Gang members typically brag about the crimes they have committed, but the officer did not know whether anyone had bragged about the particular robberies with which appellants were charged.

### B. First Prong of Section 186.22(b)(1)

Section 186.22, subdivision (b)(1) initially requires that a defendant commit a felony "for the benefit of, at the direction of, or in association with any criminal street gang . . . ." We find sufficient evidence to support the elements that the felony be committed "for the benefit of . . . or in association with any criminal street gang."

### 1. "In Association" Element

When gang members commit a crime in concert, they do so in association with a gang. (*Albillar*, *supra*, 51 Cal.4th at pp. 61–62.) In *Albillar*, three Southside Chiques gang members, who had family ties, argued that their rape of an acquaintance in concert failed to satisfy the first prong of section 186.22, subdivision (b)(1). (*Id*. at p. 62) The court reasoned that since gang members frequently have relatives who also are gang members, "to presume, as defendants urge, that family ties necessarily predominate over gang affiliation when gang members who are related commit crimes together would substantially eviscerate the gang enhancement." (*Ibid*.) When presented with competing inferences, the jury was entitled to conclude that the rape was "gang related, not family related." (*Ibid*.)

The *Albillar* court noted that "'it is conceivable that several gang members could commit a crime together, yet be on a frolic and detour unrelated to the gang.'" (*Albillar*, *supra*, 51 Cal.4th at p. 62, quoting *People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 (*Morales*).) King argues Officer Carias' testimony that members of different gangs form personal ties in school and juvenile hall supports the inference that appellants committed the robberies as friends, rather than as gang members. But the officer offered this testimony as an explanation why members of different gangs commit crime together as gang members, not as friends. He also testified, based on the hypothetical, that the robberies here were committed "in concert and thus in association with another gang member." Notably, the officer did not testify what personal ties appellants actually had. Thus, the record in this case contains even less evidence than that in *Albillar* regarding appellants' personal ties or the significance of such ties to their criminal activity. (See *Albillar*, at p. 62.) Even were the evidence to support an inference that appellants were indeed friends and that they committed the robberies as friends, rather than as members of two different Crips sets, that was simply one, but not the only, inference the jury could draw from the evidence. (See *ibid*.; see also *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1332 [that fellow gang member was defendant's brother-in-law does not cancel his gang membership].)

In supplemental briefing, King argues the jury should have been "informed" that the crime is not gang related if appellants "were on a 'frolic and detour' which was not related to gang activity, but rather occurred because appellants were friends." Certainly, if King's defense counsel believed that the evidence supported it, he could have argued to the jury that appellants committed the crimes as friends rather than as gang members. But to the extent King suggests the jury should have been instructed with the "frolic and detour" language from *Albillar*, *supra*, 51 Cal.4th at 47, 62, we disagree that such an instruction is required. To say that two defendants are on a "frolic and detour unrelated to the gang" when they commit a crime is simply another way of saying that the crime is not "gang related," i.e. not "committed for the benefit of, at the direction of, or in association with a criminal street gang." (*Id*. at p. 60.)

7

To support the expert's testimony that it is not unusual for members of different gang factions to commit crimes together, respondent cites *People v. Valdez* (1997) 58 Cal.App.4th 494, 503–504 (expert testimony offered to show members of different Norteno gangs joined forces to attack Surenos for benefit of their own and each other's gangs), and *People v. McDaniels* (1980) 107 Cal.App.3d 898, 902 (gang expert testified "it was unusual for various Cripts factions to band together when taking retaliatory action, although he had experienced situations where such alliances had been made"). Appellants argue these cases are distinguishable since retaliation against another gang clearly is a gang-related activity, while the robberies in this case are not.

The cases cited by respondent are not a measuring rod for what constitutes sufficient evidence on the subject of crimes committed in association with members of another gang faction. They do not support appellants' conclusion that, without evidence that they retaliated against a rival gang, Officer Carias had no factual basis for opining they acted in concert as gang members. In each case, the court held only that expert testimony was proper and helpful to the jury. (See *People v. Valdez*, *supra*, 58 Cal.App.4th at pp. 508–509; *People v. McDaniels*, *supra*, 107 Cal.App.3d at pp. 904–905.) The expert's testimony in this case was based on appellants' known gang affiliation, which was evident from their tattoos, some of which were on exposed parts of their bodies. It also was based on the manner in which the robberies were committed, which indicated appellants acted in concert. Coupled with his explanation that gang members' personal ties spill over into street crime, the evidence was sufficient to establish that each defendant committed the robberies in association with a gang member.

2. *"For the Benefit" Element*

Officer Carias also opined that the robberies were for the benefit of the Project Watts Crips since they occurred on that gang's territory. "Expert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[ ] criminal street gang' within the meaning of section 186.22(b)(1). [Citations.]" (*Albillar*, *supra*, 51 Cal.4th at p. 63.)

8

Appellants argue the expert's conclusion that the robberies were for the benefit of the Project Watts Crips was unsupported since there was no evidence that the victims thought appellants were gang members, that appellants announced their gang affiliation, that anyone saw them commit the robberies, or that they bragged about the crimes. While these were among the factors also found missing in *People v. Ochoa* (2009) 179 Cal.App.4th 650, 662 (*Ochoa*), on which appellants rely, other aspects of the case make it distinguishable. The defendant in *Ochoa* carjacked the victim's car alone, and there was no evidence the carjacking occurred on the territory of his or a rival gang. (*Id.* at p. 653, 662.)

Here, King argues there was no evidence the robberies took place on the territory of the Project Watts Crips even though, based on the hypothetical, the expert opined that they did. Guerrero testified he did not know the address of the property where the robberies occurred. He believed it was located at the corner of 111th Street and another street. When he reported the robberies, an officer looked up the location on a map and told him the cross street was Anzac. The investigating officer testified that at some point he realized Anzac Street does not intersect with 111th Street. There was evidence Anzac Street stops at 110th Street, but Grape Street, to the east of Anzac, continues south to 111th Street; the distance between Anzac and Grape Streets is one city block, and the two properties on the block are divided by an alley.

King claims that since it was unclear precisely where the robberies occurred, there was no evidence they occurred within gang territory, and that the prosecutor admitted as much in closing argument. We disagree. The prosecutor argued the crime occurred on 111th Street near Anzac or Grape, "within or near" the territory of the Project Watts Crips. That statement cannot be characterized as a concession that the robberies occurred outside gang territory. In addition, the gang expert affirmatively placed the area of 111th Street in the vicinity of either Anzac or Grape Street to be within the Project Watts Crips' territory. He testified that the Imperial Courts Housing Project is the gang's "hub," and that gang members tattoo themselves with the names of streets within the projects, such as "112 Street" or "115 Street." Although Guerrero was unsure about the precise address,

he testified the "projects" were "a couple of blocks down" from the site of the robberies. Thus, while placing the robberies at 111th and Anzac Streets was successfully challenged, there was evidence that they occurred in the area of 111th Street near the projects, from which the jury could infer they occurred on gang territory.

This case is distinguishable from *Ochoa*, *supra*, 179 Cal.App.4th 650, for an additional reason. That case and other cases appellants cite have found it significant that the defendant did not self-identify as a gang member during the commission of the crime. (See, e.g., *In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1363–1364; *People v. Albarran* (2007) 149 Cal.App.4th 214, 227.) But, here, there was expert testimony that the current norm is for gang members not to announce their identity. The expert explained that gang practices have evolved in order to make it more difficult for police to identify gang members who commit crimes that nevertheless benefit the gang. In light of that testimony, we cannot conclude that self-identification during the commission of a crime is an essential requirement as such a requirement would allow gang members to get around the gang enhancement.

Additionally, while neither victim noticed appellants' tattoos, there was evidence each had tattoos in visible places, such as on the face or the hands. The word "cuz" additionally evidenced their Crips membership. And while there was no evidence that either defendant bragged about these robberies, Officer Carias testified that their committing violent crimes in gang territory benefited the gang, as evidenced in the level of comfort with which appellants proceeded to rob the two victims at gunpoint and in broad daylight. Johnson contends appellants' comfort is attributable to their extensive criminal record. But the record does not show that appellants' prior convictions were before the jury, nor do they render the expert's alternative explanation inherently improbable.

We reject the suggestion that the robbery of two victims at gunpoint is not sufficiently violent to benefit the gang, in light of evidence that robbery is among the primary activities of the Project Watts Crips. In contrast to *In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1364, this is not a case of a simple theft turned into robbery by

10

happenstance. In that case, a stolen liquor bottle broke and the defendant used a piece of it to strike the loss prevention officer who intervened. (*Ibid*.) Here, in contrast, the robberies were not accidental since, from the beginning, appellants' actions showed that they intended to commit robbery at gun point.

We conclude that there was sufficient evidence to support the expert's conclusion that the robberies, as presented in the hypothetical, were for the benefit of the Project Watts Crips.

C. *The Second Prong of Section 186.22(b)(1)*

Section 186.22(b)(1) also requires that a defendant commit the gang-related felony "with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." Criminal conduct includes "the current offenses—and not merely *other* criminal conduct by gang members." (*Albillar*, *supra*, 51 Cal.4th at p. 65.) The scienter requirement "applies to *any* criminal conduct, without a further requirement that the conduct be 'apart from' the criminal conduct underlying the offense of conviction sought to be enhanced." (*Id*. at p. 66.) Since the first prong of section 186.22(b)(1) "already requires proof that the defendant commit a *gang-related* crime, . . ." the second prong does not additionally require "that the defendant act with the specific intent to promote, further, or assist a *gang*; the statute requires only the specific intent to promote, further, or assist criminal conduct by *gang members*. [Citations.]" (*Id*. at. p. 67.) "[I]f substantial evidence establishes that the defendant intended to and did commit the charged felony with known members of a gang, the jury may fairly infer that the defendant had the specific intent to promote, further, or assist criminal conduct by those gang members." (*Id*. at p. 68.) Here, there was evidence that appellants were gang members, that they intended to rob the victims, and that they aided and abetted each other in doing so. Under *Albillar*, the evidence was sufficient to establish the second prong of section 186.22(b)(1).

Relying principally on *People v. Ramon* (2009) 175 Cal.App.4th 843 (*Ramon*), Johnson argues the fact that appellants committed a crime in gang territory is insufficient to establish that he personally acted with specific intent to promote the Project Watts

11

Crips, of which he was not a member. The *Ramon* court found the fact that the defendant was with another gang member in gang territory was insufficient to establish that he committed the crimes of receiving a stolen vehicle and possession of firearm by a felon with "the specific intent to promote, further, or assist criminal conduct by gang members." (*Id*. at pp. 846, 851) The court noted the analysis "might be different if the expert's opinion had included 'possessing stolen vehicles' as one of the activities of the gang." (*Id*. at p. 853.) *Ramon* is distinguishable since, here, there was evidence robbery was one of the activities of the Project Watts Crips. And, as we have explained, specific intent to promote a gang is not required; what is required is that "the defendant intended to and did commit the charged felony with known members of a gang." (*Albillar*, *supra*, 51 Cal.4th at p. 68.)

The evidence was sufficient to support true findings on the gang allegations as to both appellants.

II

King argues the trial court improperly stayed his two one-year prison term enhancements pursuant to section 667.5, subdivision (b).

Section 667.5, subdivision (b) provides for a one-year enhancement of the prison term for each "prior separate prison term served for any felony." Once the prior prison term is found true, "the trial court may not stay the one-year enhancement, which is mandatory unless stricken. [Citations.]" (*People v. Langston* (2004) 33 Cal.4th 1237, 1241.)

In their sentencing memorandum, the People calculated King's sentence as totaling 32 years, four months, including the two one-year prior prison term enhancements. The trial court followed this memorandum in all respects, except that it stayed these two enhancements and announced King's sentence as totaling 30 years, four months. Respondent agrees this was error, but argues we should remand the case so the trial court could exercise its discretion to either strike or impose the two enhancements. We are satisfied that the trial court did not intend to impose two additional one-year

12

terms, and order the prior prison term enhancement stricken.  King's abstract of judgment should be amended accordingly.

## DISPOSITION

As to King, we modify the judgment to strike the two one-year prison term enhancements (§ 667.5, subd. (b)).  The clerk of the superior court is directed to prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment to reflect this modification.  As modified, the judgment is affirmed as to both appellants.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


MANELLA, J.


SUZUKAWA, J.

13