Filed 3/25/15  P. v. Ochoa CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE ANTONIO OCHOA,<br><br>    Defendant and Appellant. | A137763<br><br>(Contra Costa County<br>Super. Ct. No. 51210673) |

Defendant Jose Antonio Ochoa (defendant) appeals from the judgment following his conviction for various offenses, including threatening public officers.  We affirm.

PROCEDURAL BACKGROUND

On June 22, 2012, the Grand Jury of the County of Contra Costa returned an indictment accusing defendant of first degree residential burglary (Pen. Code, §§ 459, 460, subd. (a);[1] count one), during which nonparticipants in the robbery were present (§ 667.5, subd. (c)(21)); attempted first degree robbery (§§ 211, 212.5, subd. (a), 664; count two); threatening public officers and employees (§ 71; count three); and resisting an executive officer (§ 69; counts four and five).  As to counts three to five, the indictment alleged the offenses were committed for the benefit of criminal street gangs, specifically the Sureños and the South Side Locos (SSL) (§ 186.22, subd. (b)(1)).  The indictment also alleged defendant had a prior strike conviction (§§ 667, subds. (b)–(i), 1170.12) and a prior serious felony conviction (§ 667, subd. (a)(1)).

---

[1] All further undesignated section references are to the Penal Code.

1

In December 2012, a jury found defendant guilty on counts one, two, three, and five. The jury found true the enhancements to counts one and three. The jury did not reach a verdict on count four or the enhancement to count five; that count and enhancement were dismissed on the prosecution's motion. The trial court found true the prior conviction allegations.

In January 2013, the trial court sentenced defendant to state prison for a total term of 11 years and four months. This appeal followed.

FACTUAL BACKGROUND

In May 2012, Raul Moreno Chavez (Moreno) and Antonio Sandoval Navarro (Sandoval) (jointly, victims) lived in an apartment on Detroit Avenue in Concord. The victims, who testified through Spanish interpreters, testified that defendant and two other people loudly knocked on their apartment door in the early morning hours on May 19. Moreno opened the door; Sandoval called the police. Sandoval heard the men, speaking in English, say they had a knife or pistol. Moreno exited the apartment and two of the men, one of whom was defendant, entered the apartment and said the victims would be killed if they did not give the assailants what they wanted. Defendant took Sandoval's cell phone and wallet, and then threw both on the floor. Subsequently, the men went outside, where defendant was detained after Sandoval identified him to the police.[2]

At around 3 a.m. on May 19, 2012, Concord Police Officers Carl Cruz and David Greenfield responded to the area of the victims' apartment. Officer Cruz encountered defendant in the apartment complex's central "quad." The officer asked to speak to defendant, and defendant responded with verbal aggression. Officer Cruz noticed Sandoval coming down stairs nearby, and he went to speak with Sandoval while Officer

---

[2] Moreno testified he left the apartment and had tense interactions with defendant and his companions outside the apartment. His testimony was unclear and it is unnecessary to attempt to summarize it for purposes of this decision.

Greenfield stayed with defendant.[3] Sandoval identified defendant as the man who had entered his apartment.

Officer Greenfield tried to calm defendant down. The officer got defendant to sit down, but he remained belligerent. He told Officer Greenfield, "Fuck you. You know who you're fucking with? I'm a validated Sureño. I run this County." Defendant also told the officer, "I'll fuck you up." While this was happening, Officer Cruz was speaking to Sandoval within earshot, and defendant was also yelling over his shoulder to them in Spanish.

Subsequently, a struggle ensued when defendant attempted to stand up: Officer Greenfield pushed him back down, defendant shoved the officer, and the officer struggled to restrain defendant. Officer Cruz offered his assistance, and they managed to handcuff defendant after Officer Greenfield applied a "carotid control hold," which caused defendant to lose consciousness for about five seconds. Defendant was still aggressive when he regained consciousness, yelling and "kicking and flailing around." Because the hold was employed, the officers summoned medical assistance, per departmental policy. Defendant was taken to the hospital in an ambulance.

At the hospital, Officer Greenfield joined Officer Cruz, who was already with defendant. Defendant spoke to Officer Cruz in a threatening manner and referred to his ties to La Eme (also known as the Mexican Mafia), a prison gang. Officer Cruz knew defendant was a Sureño affiliated with the local South Side Locos (SSL) gang. Defendant told Officer Greenfield, "If you weren't such a pussy and had to jump me, I would have fucked you up. I can't wait to see you again when you're off-duty. I'll get you. You ain't shit without your badge and gun."

The prosecution presented testimony from another Concord police officer who had contact with defendant in 2010. Defendant was photographed, and he asked if he could "represent" during the photographs; when he was told he could, he "flashed common SSL gang . . . signs." Another officer testified he had contact with defendant in 2011 and

---

[3] The officers referred to Sandoval as Navarro in their testimony, but Sandoval testified he preferred to go by the last name Sandoval.

defendant identified himself as an "SSL Sureño." Yet another officer testified having contact with defendant in February 2012; he was in the company of at least one other SSL gang member and was wearing blue clothing (which is associated with the Sureños).

The prosecution's gang expert, Corporal Michael Kindorf, testified regarding the history and activities of La Eme aka the Mexican Mafia, the Sureños, and the SSL. They are all affiliated gangs, with La Eme occupying "Tier I," the Sureños "Tier II," and the SSL "Tier III." At the time of the present offenses, the SSL claimed as its territory "the southern district of the three policing districts" in Concord, which is where the present offenses occurred. Kindorf testified that defendant has numerous tattoos that demonstrate his affiliation with the Sureños and the SSL. Kindorf also identified various specific people as members of the SSL. Finally, Kindorf was presented with hypotheticals that mirrored the circumstances of the incident shown at trial, and he explained how the hypothesized conduct would benefit a gang.

## DISCUSSION

I.     *The Gang Expert's Testimony Did Not Violate the Confrontation Clause*

Defendant contends the testimony of the prosecution's gang expert, Corporal Kindorf, violated his Confrontation Clause rights under the Sixth Amendment to the United States Constitution. (*People v. Dungo* (2012) 55 Cal.4th 608, 612 (*Dungo*).) In particular, he argues the expert relied on hearsay to support the prosecution's showing that SSL members engaged in a "pattern of criminal gang activity," as required to sustain the gang enhancement to count three. (§ 186.22, subds. (b), (e), & (f).)

As the California Supreme Court explained in *People v. Gardeley* (1996) 14 Cal.4th 605, 621 (*Gardeley*), "[A] gang otherwise meeting the statutory definition of a 'criminal street gang' . . . is considered a criminal street gang . . . only if its members 'individually or collectively engage in or have engaged in a pattern of criminal gang activity' (§ 186.22, subd. (f)) by 'the commission, attempted commission, or solicitation of *two or more*' (italics added) of the statutorily enumerated offenses within the specified time frame (§ 186.22, subd. (e)) . . . ." (See also *People v. Hill* (2011) 191 Cal.App.4th

4

1104, 1138.)[4] The prosecution need not prove, however, that the predicate offenses used to establish a pattern of criminal activity were gang-related. (*Gardeley*, at pp. 621–622.)

In the present case, the prosecution submitted into evidence records of convictions of various persons that Corporal Kindorf opined were SSL members. In her closing, the prosecutor referenced convictions for seven offenses committed between 2008 and 2012 committed by various persons. Defendant's argument on appeal regarding the proof of the predicate offenses is that "there was considerable dependency on hearsay evidence garnered through expert testimony for the proposition that certain [persons] were members or were acting as such at the time the specified criminal acts were committed."

At the outset, we note defendant is mistaken in asserting the prosecution was required to prove the SSL members were "acting as such" in committing the predicate offenses. (*Gardeley*, *supra*, 14 Cal.4th at pp. 621–622.) As to proof that the specified individuals were SSL members at the time of the offenses, Corporal Kindorf did rely on out of court statements, including conversations with gang members and other officers. (See *People v. Valadez* (2013) 220 Cal.App.4th 16, 29 (*Valadez*).) Assuming such testimony was admitted for the truth of the matters asserted, and thus hearsay (see *id.* at pp. 30–32; *People v. Miller* (2014) 231 Cal.App. 4th 1301, 1309–1312), admission of the hearsay did not violate defendant's rights because defendant has not shown any of the hearsay was "testimonial," as required to implicate the Confrontation Clause under *Crawford v. Washington* (2004) 541 U.S. 36, 51–52, 68. In order to be considered testimonial, "the statement must be made with some degree of formality or solemnity" and "its primary purpose [must] pertain[] in some fashion to a criminal prosecution." (*Dungo, supra,* 55 Cal.4th at p. 619.)

---

[4] Subdivision (e) of section 186.22 states: "As used in this chapter, 'pattern of criminal gang activity' means the commission, attempted commission, or solicitation of two or more of the following offenses, provided at least one of those offenses occurred after the effective date of this chapter and the last of those offenses occurred within three years after a prior offense, and the offenses are committed on separate occasions, or by two or more persons."

We agree with the reasoning of the *Valadez* court, which rejected a similar contention that statements elicited by a gang expert in past conversations with gang members and police officers were testimonial. The court reasoned, "nothing in the circumstances of [the expert's] interactions with gang members and other officers objectively indicates the primary purpose of [the expert's] questioning was to target [the defendants] or any other individuals or crimes for investigation or to establish past facts for a later criminal prosecution. . . . To the contrary, he merely educated himself about the history of gangs in an area in which he was assigned as a gang officer, which would help him better understand and perhaps more effectively investigate gang activity. Like the mixed motives of officers and witnesses during ongoing emergencies, that he used this general information to testify as a gang expert at trial does not mean his *primary purpose* in obtaining this information was to use it against [the defendants] in a later criminal prosecution. Day in and day out such information would be useful to the police as part of their general community policing responsibilities quite separate from any use in some unspecified criminal prosecution." (*Valadez*, *supra*, 220 Cal.App.4th at p. 36; see also *Hill*, *supra*, 191 Cal.App.4th at pp. 1135–1136.)

Because defendant has not identified any relevant out of court statements elicited in circumstances different from those described in *Valadez*, he has not shown the trial court violated his Confrontation Clause rights by allowing the prosecution to rely on testimonial hearsay.[5]

II.     *The Gang Enhancement to Count Three is Supported by Substantial Evidence*

Defendant was convicted in count three of threatening a public officer. (§ 71.) The evidence showed that, prior to the start of their physical conflict, defendant told Officer Greenfield, "You know who you're fucking with? I'm a validated Sureño." He also told the officer, "I'll fuck you up." The jury found true an allegation that the count three offense was committed for the benefit of a criminal street gang. (§ 186.22, subd.

---

[5] Because defendant's claim is without merit, we need not and do not consider whether he properly presented an objection based on the Confrontation Clause below.

(b)(1).)  On appeal, defendant contends the allegation is not supported by substantial evidence.

"In considering a challenge to the sufficiency of the evidence to support an enhancement, we review the record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citation.]  We presume every fact in support of the judgment the trier of fact could have reasonably deduced from the evidence."  (*People v. Albillar* (2010) 51 Cal.4th 47, 59–60 (*Albillar*).)

To subject a defendant to a gang enhancement under section 186.22, subdivision (b)(1), the prosecution must prove both the underlying crime was "committed for the benefit of, at the direction of, or in association with any criminal street gang," and that the defendant possessed "the specific intent to promote, further, or assist in any criminal conduct by gang members."  (§ 186.22, subd. (b)(1); *Albillar*, *supra*, 51 Cal.4th at pp. 59-60.)  The "gang enhancement may be applied to a lone actor."  (*People v. Rios* (2013) 222 Cal.App.4th 542, 564.)

In the present case, gang expert Corporal Kindorf described the history and culture of the SSL gang and the broader gangs with which it is affiliated.  Responding to a hypothetical from the prosecutor, he opined, among other things, that threats such as those directed at Officer Greenfield by defendant communicated to the victims and any witnesses that the person making the threat or fellow gang members could retaliate if there was any cooperation with police.  (See *Albillar*, *supra*, 51 Cal.4th at p. 63 [approving use of hypothetical question to expert regarding gang benefit].)  The jury could also reasonably infer that defendant's threats would benefit the SSL and its parent Sureño gang by demonstrating a fearlessness in the face of authority.  Such violent resistance would, in the expert's words, "elevate that level of intimidation and despair in the neighborhood."  The jury's finding of gang-relatedness is further supported by the circumstances that defendant specifically called out a gang name and committed his offense in gang territory.  (Cf. *People v. Ochoa* (2009) 179 Cal.App.4th 650, 662

7

["Defendant did not call out a gang name, display gang signs, wear gang clothing, or engage in gang graffiti while committing the instant offenses."]; *ibid.* ["There was no evidence the crimes were committed in . . . gang territory . . ."].)

Defendant argues there is insufficient evidence defendant's threats were for the benefit of the SSL, because "there was no one else around besides" the police officers and Sandoval, one of the victims. However, the jury reasonably could have inferred that defendant's threats would serve a gang-related purpose even if only the officers and Sandoval heard them. Moreover, because the incident was loud and occurred in a central and public area of an apartment complex, there was a reasonable possibility that other residents would witness the incident. Defendant also argues, "what is lacking here is some sort of proof of actual benefit," because Sandoval did not refuse to testify and the officers were not intimidated. He fails, however, to cite any authority such proof is needed; the gang enhancement refers to conduct "for the benefit of" a gang (§ 186.22, subd. (b)(1)), not conduct that "benefitted" a gang. In any event, Corporal Kindorf's testimony provided a basis for the jury to infer that defendant's conduct benefitted the SSL overall in the manner the expert described, regardless of the effect of defendant's threats on Sandoval and the officers.[6]

We conclude Corporal Kindorf's testimony regarding how conduct such as defendant's could benefit the SSL was sufficient to raise an inference the conduct was "committed for the benefit of" the SSL within the meaning of section 186.22, subd. (b)(1). (*Albillar*, *supra*, 51 Cal.4th at p. 63.)

DISPOSITION

The judgment is affirmed.

---

[6] The *heading* to this argument in defendant's opening brief suggests the gang expert relied on the fact that defendant yelled in Spanish as a basis for his conclusion the offense was for the benefit of the SSL. Defendant cites to no portion of the expert's testimony in support of that assertion. In any event, the fact that defendant yelled in Spanish supports an inference defendant sought to intimidate Sandoval, whose primary language was Spanish. Corporal Kindorf testified such witness intimidation "definitely strengthens the hold that a gang has on a community."

8

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

NEEDHAM, J.