Filed 6/11/15  P. v. Martin CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B257453 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. MA060591) |
| v. | |
| TYJUAN DESHAWN MARTIN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Bernie C. Laforteza.  Affirmed as modified.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Michael C. Keller and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

Tyjuan Deshawn Martin (defendant) challenges the sufficiency of the evidence supporting the jury's finding that the carjacking he committed was gang related. We reject his challenge, and affirm the conviction and resulting sentence of 25 years to life in prison with instructions to correct an error in the abstract of judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Because defendant is attacking the sufficiency of the evidence, we recount the facts in the light most favorable to the jury's verdicts and findings. (*People v. Rios* (2013) 222 Cal.App.4th 542, 564 (*Rios*).)

In the early morning hours of August 19, 2013, Lorelle Tapolski (Tapolski) was shuttling various people around in her Mitsubishi Diamante. At one point, she drove her boyfriend, a pregnant woman and defendant (the woman's boyfriend) to an apartment complex. When defendant first got into her car, he introduced himself as "Too Bad." Tapolski recognized this was defendant's "gang name." Defendant was a self-admitted member of the Bad Influence Gang (also known as B.I.G.), and had visible B.I.G.-related gang tattoos, including a "B" with wings on his cheek and the numbers "816" on his hand. Once inside the car, defendant showed Tapolski the gun he was carrying in his bag. At some point, defendant also declared his affiliation with B.I.G.

After Tapolski drove the foursome to an apartment complex, defendant pulled out his gun and pointed it at Tapolski and her boyfriend from the back seat. He then told Tapolski, "Stop the vehicle . . . because things are about to get Too Bad," and demanded her car. Defendant then struck Tapolski's boyfriend in the nose with his gun. When the two men got out of the car and starting boxing, Tapolski threw her car keys at defendant. Defendant got back into the car, and drove off screaming "Bitches" and honking the horn.

The next day, police spotted Tapolski's Diamante. It sped away, and police gave chase with lights and sirens. As the car chase continued, all six of the Diamante's occupants jumped out of the moving vehicle, leaving it to crash into a garage. Five of the six were apprehended. They included defendant, a second B.I.G. gang member or affiliate, a member of the Grape Street Crips gang (who was driving the Diamante), and a

2

person carrying a loaded gun.[1] Fingerprints recovered from the car came back to three B.I.G. members or affiliates, only one of which Tapolski could say had been in her car before it was taken.

In an amended information, and in pertinent part, the People charged defendant with (1) carjacking (Pen. Code, § 215)[2], (2) assault with a firearm (§ 245, subd. (a)(2)), and (3) unlawful taking or driving of a vehicle (Veh. Code, § 10851, subd. (a).)  The People further alleged that the crimes were committed for the benefit of, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)) and that the carjacking and assault involved defendant's personal use of a firearm (§§ 12022.53, subd. (b) and 12022.5, subd. (a), respectively).[3]

At trial, the People called a gang expert.  When presented with a hypothetical question tracking the evidence described above, the expert opined that the carjacking was gang related because a carjacking enhances a gang's reputation in the community by sending a message regarding the gang's willingness to engage in violence, and because the car in this case was later used by gang members and other armed individuals who, after a brief "cooling off" period following the carjacking, were likely on their way to commit a gang-related shooting.  Following the trial court's denial of a motion for acquittal, the jury convicted defendant of all three crimes and found all allegations to be true.

The trial court orally sentenced defendant to 15 years to life for the gang-related carjacking (§ 186.22, subd. (b)(4)(B)), followed by 10 years for the personal use of a

---

[1] The People's gang expert testified on cross examination that all five occupants who had been apprehended and identified were B.I.G. members or affiliates, but this was not substantiated by his testimony elsewhere and was never clarified.

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[3] The amended information also alleged that defendant had a prior "strike" and a prior serious felony, but these were never established at trial and did not figure into his sentence.

firearm; the court imposed but stayed sentences of 12 years for the assault with a firearm and nine years for the unlawful taking or driving of a vehicle.

Defendant timely appeals.

## DISCUSSION

### I.  Sufficiency of the evidence that carjacking was gang related

Defendant asserts there was insufficient evidence to support a finding that the carjacking was gang related.  The minimum three-year sentence for carjacking (§ 215, subd. (b)) is increased to 15 years if the carjacking is "committed [1] for the benefit of, at the direction of, or in association with any criminal street gang"; and "[2] with the specific intent to promote, further or assist in any criminal conduct by street gang members."  (§ 186.22, subd. (b)(4)(B); *Rios*, *supra*, 222 Cal.App.4th at p. 561 [enumerating elements of gang enhancement].)  Proof of the specific intent element is "'almost inevitably circumstantial'" (*Rios*, at p. 568, quoting *People v. Bloom* (1989) 48 Cal.3d 1194, 1208), and "requires only the specific intent to promote, further, or assist criminal conduct by *gang members*"—not the gang itself (*People v. Albillar* (2010) 51 Cal.4th 47, 67 (*Albillar*)).  "There is [also] no statutory requirement that this 'criminal conduct by gang members' be distinct from the charged offense[s] . . ."  (*People v. Vasquez* (2009) 178 Cal.App.4th 347, 354 (*Vasquez*).)  Both elements may be established through expert testimony as long as that testimony is "'coupled with other evidence from which the jury could reasonably infer the crime was gang related.'"  (*People v. Ochoa* (2009) 179 Cal.App.4th 650, 659, quoting *People v. Ferraez* (2003) Cal.App.4th 925, 931 (*Ochoa*).)

In evaluating the sufficiency of the evidence, we ask whether "any rational trier of fact could have found" these elements "beyond a reasonable doubt."  (*Rios*, *supra*, 222 Cal.App.4th at p. 564, italics omitted.)  In so doing, we must view the evidence in light most favorable to the jury's finding and draw all reasonable inferences to support it.  (*Ibid.*)

4

Based on the evidence presented at defendant's trial, a rational jury could have concluded that defendant's carjacking was committed to "benefit" B.I.G. and that defendant acted with the specific intent to "promote, further, or assist" in his fellow gang members' criminal conduct.

The carjacking benefitted B.I.G. in two ways. The carjacking furthered the gang's reputation as a gang willing and capable of committing crimes because defendant committed the carjacking using his gang moniker, displaying his gang tattoos, and declaring his gang. (Accord, *Vasquez*, *supra*, 178 Cal.App.4th at p. 354 [noting how a gang member's commission of violent crimes "makes it easier for the gang to continue committing the crimes for which it is known"].) The carjacking also provided the gang a vehicle to use: Within a day of its theft, the car bore the fingerprints of two (and possibly three) B.I.G. members or affiliates other than defendant and was being used to transport two B.I.G. gang members or affiliates (including defendant), a Grape Street Crips gang member and another armed man.

A rational jury could also find that defendant specifically intended to further criminal conduct by gang members. Defendant specifically intended to commit the carjacking, and his violent commission of that crime makes it easier for the gang to commit future crimes, thereby assisting other gang members. (*Vasquez*, *supra*, 178 Cal.App.4th at pp. 354-355.) Defendant also specifically intended to promote, further or assist other criminal conduct by gang members. The gang expert acknowledged that a carjacking, in isolation, may or may not be committed with the intent to assist gang members with future criminal activity, but opined that there was no need to speculate in this case because defendant's actual use of the stolen car demonstrated that his intent all along was to obtain a car that he, his fellow B.I.G. members or affiliates, and others in different gangs and carrying weapons could use for further criminal conduct.

Defendant levels three challenges to the sufficiency of this evidence. First, he argues that the evidence shows that his motive for the carjacking was personal. He notes that he mentioned taking the car to Las Vegas; that he did not "throw" any gang signs or

5

call out any gang name; and that most gang members committing crimes for their gangs do not take along their pregnant girlfriends. Although defendant mentioned wanting to go to Las Vegas, he never took the car to Las Vegas; instead, he drove around in it locally with fellow gang members. And while defendant did not display gang signs or call out B.I.G., he introduced himself with his gang moniker, had visible gang tattoos, and otherwise declared "B.I.G." Indeed, Tapolski had no difficulty recognizing defendant's gang motivation. More to the point, the evidence as to defendant's personal motive does not make the competing evidence of gang motive insubstantial. "[T]he jury, which was presented with the competing inferences, was entitled to credit the evidence that the [crime] was gang related, not [personal]." (*Albillar*, *supra*, 51 Cal.4th at p. 62.)

Second, defendant contends that the gang expert—and, by extension, the jury—was wrong to look to the later use of the car as evidence of why defendant carjacked it in the first place. Defendant asserts this evidence cannot support either element of the gang enhancement. As to the "benefit" element, defendant points out that only two of the five people apprehended after the car chase were B.I.G. members or affiliates. This argument gives no weight to the further evidence that the car had been touched by three other B.I.G. members or affiliates other than defendant without Tapolski's knowledge (and, the jury could rationally infer, after its theft), was being driven by a Crips gang member, and was being used to transport at least one person with a loaded gun. When the evidence is considered in its totality, it shows a benefit to B.I.G. and other gang members and their affiliates. Tellingly, defendant does not challenge the sufficiency of the evidence supporting the gang enhancement as to the unlawful driving count, even though it involves this very same incident. Defendant also argues that the People did not prove that any of five people in the car was planning a specific drive-by shooting, but the People are not obligated to "'establish specific crimes the defendant intended to assist his fellow gang members in committing.'" (*Albillar*, *supra*, 51 Cal.4th at p. 66.)

As to the specific intent element, defendant posits that it is impermissible for a jury to infer his intent at the time of the carjacking from his subsequent use of the car.

6

We disagree.  As noted above, the gang expert frankly acknowledged that a person who commits a carjacking in the abstract may or may not intend to use that car to assist fellow gang members in committing criminal conduct, but went on to opine why the evidence in this case showed that defendant did so intend—namely, because defendant went ahead and actually used the car to transport other gang members and a person with a loaded firearm, to evade police in a high speed chase, and (given these uses) potentially to use the car in a driveby shooting.  This is not an unreasonable inference to draw (e.g., *Rios*, *supra*, 222 Cal.App.4th at p. 573 [noting that later use of a gun might shed light on earlier intent for transporting it]), and the jury did not act irrationally in drawing it.

Lastly, defendant argues that the gang expert's conclusion that the carjacking was gang related rested on nothing more than the commission of the carjacking by a gang member, which is insufficient evidence as noted in both *Ochoa*, *supra*, 179 Cal.App.4th at pp. 659, 662-663, and *Rios*, *supra*, 222 Cal.App.4th at pp. 573-574.  We agree with defendant's reading of *Ochoa* and *Rios*, but disagree that they are analogous to this case.  The defendant in *Ochoa* walked up to a person parked in a fast food restaurant's parking lot, pointed a shotgun at him, demanded the car, and drove off.  (*Ochoa*, at p. 653.)  The defendant in *Rios* was stopped in a stolen car, with an unregistered firearm beneath the driver's seat.  (*Rios*, at pp. 547-548.)  In both cases, the circumstances of the car theft itself were either unknown or unaccompanied by any reference to the defendant's gang affiliation, and the theft was not followed by the car's use for gang purposes; in each case, the gang expert's opinion that the car theft was gang related was accordingly too speculative to support a gang enhancement in the absence of further evidence tying the car theft to a gang.  (*Ochoa*, at pp. 659-663; *Rios*, at pp. 573-575.)  This case is different.  Not only did the evidence demonstrate that defendant made his victim aware of his gang affiliation at the time of the carjacking, but he also used the same car—the very next day—to transport members of B.I.G. and another gang as well as another armed individual.  The link to gang activity is based on this additional evidence and is, for that reason, not speculative.

7

**II.    Abstract of judgment**

Defendant argues that the abstract of judgment recording a sentence of 25 years to life on the gang-related carjacking count plus an additional 10 years for the gun enhancement on that count is not consistent with the trial court's oral pronouncement of a sentence of 15 years to life for the gang-related carjacking count plus an additional 10 years for the gun enhancement.  The People agree, and so do we.  The trial court should correct this error on remand.  (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385-386, 388-389.)

## DISPOSITION

It is ordered that the trial court prepare and forward to the California Department of Corrections and Rehabilitation a modified abstract of judgment.  It should reflect that defendant is sentenced to fifteen years to life on the carjacking (count one), with an additional ten years for the gun enhancement.  As modified, the judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.

HOFFSTADT

We concur:


_____, P. J.

BOREN


_____, J.

CHAVEZ

8